# CITY OF DALLAS ET AL. *v.* STANGLIN, INDIVIDUALLY AND DBA TWILIGHT SKATING RINK

No. 87–1848.   Argued March 1, 1989—Decided April 3, 1989

REHNQUIST, C. J., delivered the opinion of the Court, in which BREN-NAN, WHITE, MARSHALL, O'CONNOR, SCALIA, and KENNEDY, JJ., joined. STEVENS, J., filed an opinion concurring in the judgment, in which BLACK-MUN, J., joined, *post*, p. 28.

*Craig Hopkins* argued the cause for petitioners. With him on the briefs were *Analeslie Muncy* and *Kenneth C. Dippel.*

*Daniel J. Sheehan, Jr.,* argued the cause and filed a brief for respondent.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner city of Dallas adopted an ordinance restricting admission to certain dance halls to persons between the ages of 14 and 18. Respondent, the owner of one of these "teen-age" dance halls, sued to contest the constitutional validity of the ordinance. The Texas Court of Appeals held that the ordinance violated the First Amendment right of persons between the ages of 14 and 18 to associate with persons out-

---

*Briefs of *amici curiae* urging reversal were filed for the National Institute of Municipal Officers by *William I. Thornton, Jr., Frank B. Gummey III, William H. Taube, Roy D. Bates, Robert J. Alfton, James K. Baker, Robert J. Mangler, Neal E. McNeill, Dante R. Pellegrini, Clifford D. Pierce, Jr., Benjamin L. Brown,* and *Charles S. Rhyne;* and for the United States Conference of Mayors et al. by *Benna Ruth Solomon.*

side that age group. We now reverse, holding that the First Amendment secures no such right.

In 1985, in response to requests for dance halls open only to teenagers, the city of Dallas authorized the licensing of "Class E" dance halls.[1] The purpose of the ordinance was to provide a place where teenagers could socialize with each other, but not be subject to the potentially detrimental influences of older teenagers and young adults. The provision of the ordinance at issue here, Dallas City Code § 14–8.1 (1985), restricts the ages of admission to Class E dance halls to persons between the ages of 14 and 18.[2] This provision, as

---

[1] Dallas also licenses Class A, B, and C dance halls, which differ in the number of days per week dancing is permitted; Class D is for dance instruction. Persons under 17 must be accompanied by a parent for admission to Class A, B, and C dance halls. Dallas City Code §§ 14–1, 14–8 (1985–1986). A dance-hall license is not needed if the dance is at any of the following locations: a private residence from which the general public is excluded; a place owned by the federal, state, or local government; a public or private elementary school, secondary school, college, or university; a place owned by a religious organization; or a private club. *Ibid.*

[2] Section 14–8.1 of the Dallas City Code provides:

"(a) No person under the age of 14 years or over the age of 18 years may enter a Class E dance hall.

"(b) A person commits an offense if he is over the age of 18 years and:

"(1) enters a Class E dance hall; or

"(2) for the purposes of gaining admittance into a Class E dance hall, he falsely represents himself to be:

"(A) of an age from 14 years through 18 years;

"(B) a licensee or an employee of the dance hall;

"(C) a parent or guardian of a person inside the dance hall;

"(D) a governmental employee in the performance of his duties.

"(c) A licensee or an employee of a Class E dance hall commits an offense if he knowingly allows a person to enter or remain on the premises of a dance hall who is:

"(1) under the age of 14 years; or

"(2) over the age of 18 years.

"(d) It is a defense to prosecution under Subsections (b)(1) and (c)(2) that the person is:

enacted, restricted admission to those between 14 and 17, but it was subsequently amended to include 18-year-olds.  Parents, guardians, law enforcement, and dance-hall personnel are excepted from the ordinance's age restriction.  The ordinance also limits the hours of operation of Class E dance halls to between 1 p.m. and midnight daily when school is not in session.  § 14–5(d)(2).

Respondent operates the Twilight Skating Rink in Dallas and obtained a license for a Class E dance hall.  He divided the floor of his roller-skating rink into two sections with moveable plastic cones or pylons.  On one side of the pylons, persons between the ages of 14 and 18 dance, while on the other side, persons of all ages skate to the same music—usually soul and "funk" music played by a disc jockey.  No age or hour restrictions are applicable to the skating rink.  Respondent does not serve alcohol on the premises, and security personnel are present.  The Twilight does not have a selective admissions policy.  It charges between $3.50 and $5 per person for admission to the dance hall and between $2.50 and $5 per person for admission to the skating rink.  Most of the patrons are strangers to each other, and the establishment serves as many as 1,000 customers per night.

Respondent sued in the District Court of Dallas County to enjoin enforcement of the age and hour restrictions of the ordinance.  He contended that the ordinance violated substantive due process and equal protection under the United States and Texas Constitutions, and that it unconstitutionally infringed the rights of persons between the ages of 14 and 17 (now 18) to associate with persons outside that age bracket.[3]  The trial court upheld the ordinance, finding that it was ra-

---

"(1) a licensee or employee of a dance hall;

"(2) a parent or guardian of a person inside the dance hall; or

"(3) a governmental employee in the performance of his duties."

[3] The Court of Appeals held that respondent had standing to assert the associational rights of the teenage patrons of his establishment.  744 S. W. 2d 165, 168 (1987).  That issue has not been raised before us.

tionally related to the city's legitimate interest in ensuring the safety and welfare of children.

The Texas Court of Appeals upheld the ordinance's time restriction, but it struck down the age restriction. 744 S. W. 2d 165 (1987). The Court of Appeals held that the age restriction violated the First Amendment associational rights of minors. To support a restriction on the fundamental right of "social association," the court said that "the legislative body must show a compelling interest," and the regulation "must be accomplished by the least restrictive means." *Id.*, at 168. The court recognized the city's interest in "protect-[ing] minors from detrimental, corrupting influences," *ibid.*, but held that the "City's stated purposes . . . may be achieved in ways that are less intrusive on minors' freedom to associate," *id.*, at 169. The Court of Appeals stated that "[a] child's right of association may not be abridged simply on the premise that he 'might' associate with those who would persuade him into bad habits," and that "neither the activity of dancing *per se*, nor association of children aged fourteen through eighteen with persons of other ages in the context of dancing renders such children peculiarly vulnerable to the evils that defendant City seeks to prevent." *Ibid.* We granted certiorari, 488 U. S. 815 (1988), and now reverse.

The dispositive question in this case is the level of judicial "scrutiny" to be applied to the city's ordinance. Unless laws "create suspect classifications or impinge upon constitutionally protected rights," *San Antonio Independent School Dist. v. Rodriguez*, 411 U. S. 1, 40 (1973), it need only be shown that they bear "some rational relationship to a legitimate state purpose," *id.*, at 44. Respondent does not contend that dance-hall patrons are a "suspect classification," but he does urge that the ordinance in question interferes with associational rights of such patrons guaranteed by the First Amendment.

While the First Amendment does not in terms protect a "right of association," our cases have recognized that it em-

braces such a right in certain circumstances. In *Roberts* v. *United States Jaycees*, 468 U. S. 609 (1984), we noted two different sorts of "freedom of association" that are protected by the United States Constitution:

> "Our decisions have referred to constitutionally protected 'freedom of association' in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.*, at 617–618.

It is clear beyond cavil that dance-hall patrons, who may number 1,000 on any given night, are not engaged in the sort of "intimate human relationships" referred to in *Roberts*. The Texas Court of Appeals, however, thought that such patrons were engaged in a form of expressive activity that was protected by the First Amendment. We disagree.

The Dallas ordinance restricts attendance at Class E dance halls to minors between the ages of 14 and 18 and certain excepted adults. It thus limits the minors' ability to dance with adults who may not attend, and it limits the opportunity of such adults to dance with minors. These opportunities might be described as "associational" in common parlance, but they simply do not involve the sort of expressive association that the First Amendment has been held to protect. The hundreds of teenagers who congregate each night at this particular dance hall are not members of any organized association; they are patrons of the same business establishment.

Most are strangers to one another, and the dance hall admits all who are willing to pay the admission fee. There is no suggestion that these patrons "take positions on public questions" or perform any of the other similar activities described in *Board of Directors of Rotary International* v. *Rotary Club of Duarte*, 481 U. S. 537, 548 (1987).

The cases cited in *Roberts* recognize that "freedom of speech" means more than simply the right to talk and to write. It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment. We think the activity of these dance-hall patrons—coming together to engage in recreational dancing—is not protected by the First Amendment. Thus this activity qualifies neither as a form of "intimate association" nor as a form of "expressive association" as those terms were described in *Roberts*.

Unlike the Court of Appeals, we do not think the Constitution recognizes a generalized right of "social association" that includes chance encounters in dance halls. The Court of Appeals relied, mistakenly we think, on a statement from our opinion in *Griswold* v. *Connecticut*, 381 U. S. 479, 483 (1965), that "[t]he right to freely associate is not limited to 'political' assemblies, but includes those that 'pertain to the *social*, legal, and economic benefit' of our citizens." 744 S. W. 2d, at 168, quoting *Griswold* v. *Connecticut, supra,* at 483. But the quoted language from *Griswold* recognizes nothing more than that the right of expressive association extends to groups organized to engage in speech that does not pertain directly to politics.

The Dallas ordinance, therefore, implicates no suspect class and impinges on no constitutionally protected right. The question remaining is whether the classification engaged in by the city survives "rational-basis" scrutiny under the Equal Protection Clause. The city has chosen to impose a

rule that separates 14- to 18-year-olds from what may be the corrupting influences of older teenagers and young adults. Ray Couch, an urban planner for the city's Department of Planning and Development, testified:

> " '[O]lder kids [whom the ordinance prohibits from entering Class E dance halls] can access drugs and alcohol, and they have more mature sexual attitudes, more liberal sexual attitudes in general. . . . And we're concerned about mixing up these [older] individuals with youngsters that [sic] have not fully matured.' " 744 S. W. 2d, at 168, n. 3.

A Dallas police officer, Wesley Michael, testified that the age restriction was intended to discourage juvenile crime.

Respondent claims that this restriction "has no real connection with the City's stated interests and objectives." Brief for Respondent 13. Except for saloons and teenage dance halls, respondent argues, teenagers and adults in Dallas may associate with each other, including at the skating area of the Twilight Skating Rink. *Id.*, at 14. Respondent also states, as did the court below, that the city can achieve its objectives through increased supervision, education, and prosecution of those who corrupt minors. *Id.*, at 15.

We think respondent's arguments misapprehend the nature of rational-basis scrutiny, which is the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause. In *Dandridge* v. *Williams*, 397 U. S. 471 (1970), in rejecting the claim that Maryland welfare legislation violated the Equal Protection Clause, the Court said:

> "[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78.

'The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific.' *Metropolis Theatre Co.* v. *City of Chicago*, 228 U. S. 61, 69–70. . . .

". . . [The rational-basis standard] is true to the principle that the Fourteenth Amendment gives the federal courts no power to impose upon the States their views of what constitutes wise economic or social policy." *Id.*, at 485–486 (footnote omitted).

We think that similar considerations support the age restriction at issue here. As we said in *New Orleans* v. *Dukes*, 427 U. S. 297, 303–304 (1976): "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." See also *United States Railroad Retirement Board* v. *Fritz*, 449 U. S. 166, 177 (1980). The city could reasonably conclude, as Couch stated, that teenagers might be susceptible to corrupting influences if permitted, unaccompanied by their parents, to frequent a dance hall with older persons. See 7 E. McQuillin, Law of Municipal Corporations § 24.210 (3d ed. 1981) ("Public dance halls have been regarded as being in that category of businesses and vocations having potential evil consequences"). The city could properly conclude that limiting dance-hall contacts between juveniles and adults would make less likely illicit or undesirable juvenile involvement with alcohol, illegal drugs, and promiscuous sex.[4] It is true that the city allows teenagers

---

[4] The Court considered similar factors in *Prince* v. *Massachusetts*, 321 U. S. 158 (1944), where it upheld, over claims of infringement on religious freedom and equal protection, a statute prohibiting children under 12 from selling newspapers on the street. After noting that the statute would have been invalid if applied to adults, the Court said:

"The state's authority over children's activities is broader than over like actions of adults. This is peculiarly true of public activities and in matters of employment. . . . Among evils most appropriate for such action are the crippling effects of child employment, more especially in public places, and

and adults to roller-skate together, but skating involves less physical contact than dancing. The differences between the two activities may not be striking, but differentiation need not be striking in order to survive rational-basis scrutiny.

We hold that the Dallas ordinance does not infringe on any constitutionally protected right of association, and that a rational relationship exists between the age restriction for Class E dance halls and the city's interest in promoting the welfare of teenagers. The judgment of the Court of Appeals is therefore reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, concurring in the judgment.

In my opinion the opportunity to make friends and enjoy the company of other people—in a dance hall or elsewhere—is an aspect of liberty protected by the Fourteenth Amendment. For that reason, I believe the critical issue in this case involves substantive due process rather than the First Amendment right of association. Nonetheless, I agree with the Court that the city has adequately justified the ordinance's modest impairment of the liberty of teenagers. Indeed, I suspect that the ordinance actually gives teenagers

---

the possible harms arising from other activities subject to all the diverse influences of the street. It is too late now to doubt that legislation appropriately designed to reach such evils is within the state's police power." *Id.*, at 168–169 (footnotes omitted).

See also *Bellotti* v. *Baird*, 443 U. S. 622, 635 (1979) (plurality opinion), quoting *McKeiver* v. *Pennsylvania*, 403 U. S. 528, 550 (plurality opinion) ("State is entitled to adjust its legal system to account for children's vulnerability and their need for 'concern, . . . sympathy, and . . . paternal attention'"); *Ginsberg* v. *New York*, 390 U. S. 629 (1968) (upholding right of State to prohibit sale of "girlie" magazines to minors).

greater opportunity to associate than they would have if the Class E dance-hall provision were invalidated.*  I therefore join the Court's judgment.

---

*I do not join the Court's assessment of this case under the Equal Protection Clause.  Although the equal protection issue received nominal attention in the trial court, see Pet. for Cert. C–1 to C–7, it was neither reviewed by the Texas Court of Appeals nor briefed before us.  See 744 S. W. 2d 165 (1987); Pet. for Cert. 3; Brief for Petitioners 4.