REQUESTED BY: Senator Mark Quandahl Nebraska State Legislature
Neb. Rev. Stat. §§ 21-608 through 21-624 (1997) deal with charitable and fraternal societies in Nebraska, and examples of specific organizations subject to those statutes include: The Grand Lodge, Ancient Free and Accepted Masons, The Benevolent and Protective Order of Elks of the United States of America, the Knights of Columbus, The Grand Lodge Fraternal Order of Eagles, The American Legion Auxiliary, and various college fraternities and sororities. Among other things, those statutes treat such organizations as corporations, and allow them to sue and be sued, to hold and convey real and personal property, and to "do all other things usually done by corporations for the purpose for which organized." Neb. Rev. Stat. § 21-609 (1997).
You have introduced LB 1415 which would make several changes in those statutes pertaining to charitable and fraternal societies. For example, § 1 of the bill would add the following language to § 21-609:
 Each [charitable and fraternal] organization listed in section 21-608 and any such subordinate organization shall conduct its affairs, including the acquisition, retention, governance, and expulsion of members, in accordance with its charter, constitution, and bylaws as filed with the Secretary of State or the clerk of the county court. The relationship between each organization and its members shall be contractual. If an organization violates its own charter, constitution, or bylaws with respect to any member or abridges any constitutional or statutory rights of any member, such member may institute an action in the district court of Lancaster County or the district court of the county in which such organization meets or maintains an office or place of business.
In your opinion request letter, you indicate that you are concerned as to whether a portion of LB 1415 "may be unconstitutional under the Freedom of Association clause held in the First Amendment to the U.S. Constitution." From discussions with your staff, we understand that the portion of the bill which gives rise to your concern is the portion of the bill quoted above. We also understand from discussions with your staff that the associational rights at issue are the rights of the charitable or fraternal organizations themselves.
 1. First Amendment Right of Association
The United States Supreme Court addressed the extent to which the federal Constitution and the First Amendment protect the associational freedom of private clubs and organizations in several cases during the 1980's. City of Dallas v. Stanglin,490 U.S. 19 (1989); New York State Club Association, Inc. v. City ofNew York, 487 U.S. 1 (1988); Board of Directors of Rotary Int'l v.Rotary Club of Duarte, 481 U.S. 537 (1987); Roberts v.United States Jaycees, 468 U.S. 609 (1984). Those various cases hold that the Constitution protects two types of associational freedom:
 First, the Court has held that the Constitution protects against unjustified government interference with an individual's choice to enter into and maintain certain intimate or private relationships. Second, the Court has upheld the freedom of individuals to associate for the purpose of engaging in protected speech or religious activities.
Rotary Club of Duarte, 481 U.S. at 544.
The first type of associational freedom, the right of intimate or private association, includes relationships such as marriage, the begetting and bearing of children, child rearing and education and cohabitation with relatives. Id. at 545. It also includes private, non-familial relationships which presuppose "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctly personal aspects of one's life." Roberts, 468 U.S. at 619-620. Factors which should be considered in determining whether a particular association is sufficiently private to warrant constitutional protection in that context include: 1) the organization's size, 2) its purposes, 3) the selectivity in choosing its members, 4) the congeniality among its members, 5) whether others are excluded from critical aspects of the relationship, 6) the history of the organization, 7) the use of any association facilities by nonmembers, 8) whether the association advertises for members and 9) whether the association is nonprofit or for profit. LouisianaDebating and Literary Association v. The City of New Orleans,42 F.3d 1483 (5th Cir. 1995).
The second type of associational freedom, the right of expressive association, involves a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts,468 U.S. at 622. Essentially, it involves the right to combine with others to advance one's views, or to form associations with others that advocate public or private viewpoints. New York State ClubAssociation, 487 U.S. at 13.
Neither type of associational freedom is absolute. Roberts, 468 at 623; Louisiana Debating and Literary Association,42 F.3d at 1498. However, infringement on those freedoms by state action requires a showing that the state action serves a compelling state interest which cannot be achieved through means significantly less restrictive of associational freedoms. Id.
 2. Constitutionality of LB 1415
At the outset, it appears to us, based upon the standards set out above and a number of cases in this area, that there is a significant issue as to whether many of the charitable and fraternal societies potentially subject to LB 1415 and the statutes dealing with those organizations are sufficiently private so as to warrant constitutional protection for the right of intimate or private association. City of Dallas v. Stanglin,490 U.S. 19 (1989) (teenage dance halls with more than 1000 persons in attendance do not possess protected right of association); NewYork State Club Association, Inc. v. City of New York, 487 U.S. 1
(1988) (private clubs with more than 400 members which provided regular meal service to and received payments from nonmembers did not possess protected right of association); Board of Directorsof Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537
(1987) (requiring local Rotary Club to admit women members did not abridge any protected right of association); Roberts v.United States Jaycees, 468 U.S. 609 (1984) (requiring National Jaycees organization to admit women members did not abridge any protected right of association); Salvation Army v. Department of CommunityAffairs of the State of New Jersey, 919 F.2d 183 (3rd Cir. 1990) (family center for disadvantaged persons run by the Salvation Army could be subjected to state statutes regulating boarding houses without violating right of intimate or private association); Watson v. Fraternal Order of Eagles, 915 F.2d 235
(6th Cir. 1990) (local Fraternal Order of Eagles club did not possess protected right of association). In addition, we suspect that many, if not most, of the organizations potentially subject to LB 1415 and the statutes dealing with charitable and fraternal societies do not take positions on public questions or take steps to advocate particular public or private viewpoints so as to implicate the right of expressive association. Nevertheless, the constitutionality of a statute must be judged, not by what has been done or possibly may be done under it, but by what the statute authorizes to be done under its provisions. State v.Kelley, 249 Neb. 99, 541 N.W.2d 645 (1996). The statutes involving charitable and fraternal societies and LB 1415 could potentially reach private organizations and/or expressive association. Therefore, we believe that those statutes must be measured under the applicable constitutional standards.
In that regard, there is case law in this area which indicates that state action which impinges upon First Amendment associational rights is actionable only if it directly and substantially interferes with those rights. Long v. UAW,485 U.S. 360 (1988); Fighting Finest, Inc. v. Bretton, 95 F.3d 224 (2nd Cir. 1996). As noted In the Bretton case:
 The Supreme Court has held that, consonant with the First Amendment, government may engage in some conduct that incidentally inhibits protected forms of association. Though such inhibiting conduct might make it more difficult for individuals to exercise their freedom of association, this consequence does not, without more, result in a violation of the First Amendment. To be cognizable, the interference with associational rights must be "direct and substantial" or "significant."
Id. at 228 (citations omitted).
In the present case, we do not believe that any interference with associational rights occasioned by the provisions at issue in LB 1415 would be direct and substantial or significant. Section 1 of the bill provides that members of a charitable or fraternal society have contractual rights growing out of that organization's charter, constitution and bylaws which are enforceable by an action in district court. However, Section 1 of LB 1415 does not prohibit charitable or fraternal societies from expelling or taking other action against their members consistent with their charter documents. Nor does that section require charitable or fraternal societies to associate or affiliate with particular individuals. It might be argued that Section 1 of LB 1415 creates a new cause of action against charitable or fraternal organizations based upon abridgement of constitutional or statutory rights. Nevertheless, we believe a better reading of that section is that it simply gives district courts clearer subject matter jurisdiction over any existing constitutional or statutory actions. For those reasons, we believe that any impact of Section 1 of LB 1415 on the associational rights of charitable and fraternal societies is only incidental. Therefore, in our view, the provisions at issue in the bill would not violate theFirst Amendment associational rights of the organizations subject to the legislation.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
cc. Patrick J. O'Donnell Clerk of the Legislature
Approved by:
DON STENBERG
Attorney General