Jerry MILLER, Plaintiff,

v.

Bob TAFT, Governor of the State
of Ohio, et al., Defendants.

No. 3:01 CV 7056.

United States District Court,
N.D. Ohio,
Western Division.

April 18, 2001.

*See also* 87 Ohio St.3d 159, 718 N.E.2d
428.

Jerry Miller, Lima, OH, plaintiff pro se.

*OPINION AND ORDER*

CARR, District Judge.

### I.

On February 2, 2001, plaintiff *pro se* Jerry Miller filed this civil rights action against Ohio Governor Bob Taft, Ohio Attorney General Betty Montgomery, all Prosecuting Attorneys and Law Enforcement Officials of Ohio, Judge Richard K. Warren and "all Judges of the State of Ohio (Allen County Court of Common Pleas)". In his complaint, Mr. Miller asserts that the defendants violated his civil rights under the First, Fifth, Ninth and Fourteenth Amendments of the Constitution through the enforcement of Ohio's Sexual Predator Registration and Notification Laws, Ohio Revised Code § 2950, *et seq.* ("the Act"). The plaintiff is seeking declaratory and "prospective" injunctive relief. For the reasons set forth below, the complaint is dismissed pursuant to 28 U.S.C. § 1915A.

### II.

On July 8, 1997, Judge Michael Rumer of the Allen County Court of Common Pleas issued an order *sua sponte* wherein he declined the Ohio Department of Rehabilitation and Correction's (ODRC) recommendation to adjudicate Miller a sexual predator pursuant to Ohio Revised Code (O.R.C.) § 2950.09. Relying on the Third Circuit Court of Appeals' opinion in *State v. Cook,* No. 1–97–21, 1997 WL 452014 (Ohio App. 3 Dist. Aug.7, 1997)[1], Judge Rumer stated:

> The Court finds that as applied to his [sic] defendant, RC 2550.09(C) is the retroactive application of a legislative

1. The Third Circuit Court of Appeals held, in part, that the retroactive application of the Act violated the state constitution. This decision was later reversed by the Ohio Supreme Court in *State v. Cook,* 83 Ohio St. St.3d 404, 700 N.E.2d 570 (1998)

enactment and thus violative of Section 28, Article II of the Ohio Constitution. *State v. Miller*, No. 93–C–55 (Allen County Ct. July 8, 1997).

In an order filed, February 10, 1999, defendant Judge Jeffrey L. Reed vacated the court's July 8, 1997 judgment following the Ohio Supreme Court's determination in *State v. Cook*, 83 Ohio St.3d 404, 700 N.E.2d 570 (1998) that § 2950.09(B)(1) does not violate the Retroactivity Clause or the Ex Post Facto Clause of the Constitution. The court ordered a hearing on April 9, 1999 to determine whether Mr. Miller would be classified as a sexual predator.

Mr. Miller appealed to the Allen County Court of Appeals for the Third Appellate District. He argued, *inter alia*, that the trial court did not have subject matter jurisdiction to proceed with the sexual predator adjudication hearing because the ODRC had not complied with the mandates of O.R.C. § 2950.09(C)(1) through § 2950.09(B)(2)(a)–(j), Judge Reed lacked jurisdiction to vacate Judge Rumer's order in his discretion, and that, because the prosecutor did not seek an appeal of right in accordance with O.R.C. § 2950.09(C)(2), any further attempt to label him a sexual predator was *"res judicata* and collaterally estopped". (Compl. at 11.) The appellate court dismissed his appeal and he appealed to the Ohio Supreme Court, which affirmed the decision of the appellate court. *State ex rel. Miller v. Reed, Judge*, 87 Ohio St.3d 159, 718 N.E.2d 428, (1999).

Prior to his hearing, Mr. Miller moved to dismiss the Sexual Predator Adjudication Hearing on the grounds that the Ohio Sexual Predator and Registration & Notification Act violated the First Amendment Right to Peaceably Assemble, the Ninth Amendment Enumeration of Rights and the Fifth and Fourteenth Amendment Due Process and Equal Protection Clauses. He argued further that the ODRC did not comply with § 2950.09(C)(1) as set forth in *State ex rel. Bruggeman v. Ingraham*, 87 Ohio St.3d 230, 718 N.E.2d 1285 (1999). The motion was denied, but defendant Judge Warren, to whom the case was reassigned, continued the hearing until further order in consideration of the fact that Mr. Miller would not be eligible for parole until January 2008. The plaintiff argues Judge Warren violated the Due Process and Equal Protection Clauses when he failed to determine the matter *res judicata* because of the prosecutor's failure to appeal Judge Rumer's original order as set forth in *State v. Dick*, 137 Ohio App.3d 260, 738 N.E.2d 456 (2000).

In his complaint before this court, Mr. Miller claims that Governor Taft's failure to veto the Act was done with an unlawful and unconstitutional motive. The plaintiff alleges that Attorney General Montgomery's failure to correct the Act as a legislative error shows an unlawful and unconstitutional motive and blatant disregard for his First, Fifth, Ninth and Fourteenth Amendment rights. In his claims against Judge Warren, Mr. Miller argues he lacked subject-matter jurisdiction to continue the adjudication hearing and violated his rights under the Due Process and Equal Protections Clauses. The basis for this attack seems to be Mr. Miller's suggestion that the Ohio Department of Rehabilitation and Correction (ODRC) did not recommend his classification as a sexual predator in compliance with O.R.C. § 2950.09(C) [2]. He asserts that in *State ex*

---

**2.** The statute provides, in relevant part:
   If a person was convicted of or pleaded guilty to a sexually oriented offense prior to January 1, 1997, if the person was not sentenced for the offense on or after January 1, 1997, and if, on or after January 1,

*rel. Bruggeman v. Ingraham*, 87 Ohio St.3d 230, 718 N.E.2d 1285(1999) the Ohio Supreme Court determined that the procedural provisions of O.R.C. § 2950.09(b)(2)(a)–(j) are "jurisdictional and mandatory" and that because Judge Reed never had "jurisdiction to vacate Judge Rumer's order, any further attempts by Judge Warren to adjudicate him a sexual predator were 'res judicata' and collaterally estopped' " (Compl. at 11.)

Mr. Miller challenges the Act as unconstitutional because it "does not serve a legitimate governmental purpose because it is contrary to what the Supreme Court ruled as the appropriate remedy as set forth in *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), that 'civil commitment & incapacitation' best serve governmental interest." (Compl. at 6.) He claims that by labeling persons convicted of sexually oriented offenses and "requiring them to register this information with local law enforcement who then inform neighbors that an 'animal' lives in their community the Act creates an atmosphere of hysteria and violence which violates his rights and the rights of society." The plaintiff claims further that this law "divests him of his clearly established First Amendment right to 'Peaceably Assemble & to Associate,' because Plaintiff is now labled [sic] as a 'dangerous animal' and has, and will be hereinafter, 'shunned by society, and held as a total social outcast,' this will make Plaintiff the victim of vigilante justice, which poses a legitimate threat to the safety of Plaintiff's person and property (chattels)." (Compl. at 5–6.)

## III.

■ A district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *Siller v. Dean*, No. 99–5323, 2000 WL 145167, at *2 (6th Cir. Feb.1, 2000); *see Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims).

■ As a threshold matter, Mr. Miller does not have standing to challenge the constitutionality of O.R.C. § 2950.11 as he did not allege harm to a concrete, personal interest. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Section 2950.11 applies only to those who have been adjudicated to be sexual predators or habitual

---

1997, the offender is serving a term of imprisonment in a state correctional institution, prior to the offender's release from the term of imprisonment, the department of rehabilitation and correction shall determine whether to recommend that the offender be adjudicated as being a sexual predator. In making a determination under this division as to whether to recommend that the offender be adjudicated as being a sexual predator, the department shall consider all relevant factors, including, but not limited to, all of the factors specified in division (B)(2) of this section. If the department determines that it will recommend that the offender be adjudicated as being a sexual predator, it immediately shall send the recommendation to the court that sentenced the offender and shall enter its determination and recommendation in the offender's institutional record, and the court shall proceed in accordance with division (C)(2) of this section. OHIO REV.CODE § 2950.09(C)(1).

sex offenders. Mr. Miller does not allege that he was adjudicated to be either a sexual predator or habitual sex offender. Instead, he alleges he was convicted of a sexually oriented offense for conduct occurring before January 1, 1997, the effective date of the law, and that he is facing a sexual predator adjudication hearing at an undetermined time in the future. Thus, as to § 2950.11, Mr. Miller is not asserting a violation of constitutional rights personal to himself, but is improperly asserting a violation of constitutional rights personal to unnamed third parties. *See Pestrak v. Ohio Elections Comm'n,* 926 F.2d 573, 577 (6th Cir.1991).

■ Even if Mr. Miller could overcome his lack of standing, the injuries to which he claims the Act would expose him are not related to First Amendment protections. In spite of his attempt to create a subcategory of protection under the First Amendment right to freely associate, the case law Mr. Miller cites does not support his theory. For example, the plaintiff's reference to *City of Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) is misplaced. In *Morales,* the Supreme Court addressed the question of whether the Illinois Supreme Court properly held that Chicago's Gang Congregation Ordinance violated the Due Process Clause of the Fourteenth Amendment. In affirming the Illinois Supreme Court, the *Morales* court recognized that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment. We have expressly identified this 'right to remove from one place to another according to inclination' as 'an attribute of personal liberty' protected by the Constitution." *Id.* at 1857 (citations omitted) It seems that Mr. Miller's reliance on *Morales* is an attempt to link the Fourteenth Amendment right to move

freely in society without the threat of a Due Process infringement with the First Amendment right to freely assemble. There is, however, no right to move and assemble freely in society without risk of disdain or contempt from members of one's community.

■ Further, nothing in the Act allows the State to remove the plaintiff from a public place, and certainly not without due process of the law. In *City of Dallas v. Stanglin,* 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989), the Supreme Court recognized two different sorts of "freedom of association" that are protected by the Constitution:

> In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.... In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment— speech, assembly, petition for the redress of grievances, and the exercise of religion.

*Id.* at 1594 (citation omitted). In his complaint before this court, Mr. Miller has not set forth allegations reasonably suggesting that either of these sorts of protected freedom of association is infringed by enforcement of the Act. While the plaintiff may fear that members of society would shun him if he were a registered sexual predator, any damage to his reputation as a result of the Act is not a constitutionally protected liberty or property interest. *See Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

The Supreme Court of Ohio addressed the substance of Mr. Miller's complaint in

its recent *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000) decision. In *Williams* the court examined the tangential effect of notification had on a sexual predator's attempt to integrate into his community. The court stated:

R.C Chapter 2950 does not impair the right to a favorable reputation. A favorable reputation is not a protected liberty interest.... As we stated in *Cook*, " 'an allegation that government dissemination of information or government defamation has caused damage to reputation, even with all the attendant emotional anguish and social stigma, does not in itself state a cause of action for violation of a constitutional right. \*\*\*' Further, 'the harsh consequences [of] classification and community notification \*\*\* come not as a direct result of the sexual offender law, but instead as a direct societal consequence of [the offender's] past actions.' " (Citations omitted.) *Cook*, 83 Ohio St.3d at 413, 700 N.E.2d at 579. Accordingly, we hold that R.C. Chapter 2950 does not violate the rights enumerated in Section 1, Article I of the Ohio Constitution.

*Williams*, 88 Ohio St.3d at 527, 728 N.E.2d at 357.

## IV.

Under O.R.C. § 2950.09(C), the sexual predator classification hearing for offenders convicted of a sexually oriented offense, sentenced prior to January 1, 1997, and still serving a term of imprisonment in a state correctional institution, may occur only after the ODRC recommends that the offender be adjudicated a sexual predator. *See* O.R.C. § 2950.09(C)(1) & (2). It is apparent from Mr. Miller's complaint and attachments that he was sentenced before January 1, 1997 and is still serving a term of imprisonment for that crime. Therefore, the statute requires that a sexual predator classification hearing cannot oc-

cur until the ODRC recommends an offender's adjudication as a sexual predator.

■ A close examination of the facts alleged reveals that the ODRC did recommend Mr. Miller's classification as a sexual predator. In the order vacating Judge Rumer's order, Judge Reed clearly stated: "The Department of Rehabilitation and Correction has recommended to the Court that defendant be classified as a Sexual Predator. The Court is not bound by the recommendation of the Department of Rehabilitation and Corrections. R.C. 2950.09(C)(2)." *State v. Miller*, No. CR93–02–55(Allen County Ct. Feb. 10, 1999). In his subsequent order postponing Mr. Miller's hearing until September 2007, Judge Reed noted "[f]rom now until approximately September of 2007, the institution can monitor the defendant's behavior and submit its recommendation pursuant to O.R.C. 2950.09(C)(1) prior to any possible release and/or parole." *State v. Miller*, No. CR93–02–55 (Allen County Ct. Jan. 14, 2000). Nothing in the record before this court suggests that the court attempted or expects to conduct a sexual predator hearing without a recommendation from the ODRC.

Mr. Miller's reliance on the Ohio Supreme Court' opinion in *State ex rel., Bruggeman v. Ingraham*, 87 Ohio St.3d 230, 718 N.E.2d 1285(1999) to attack the trial court's jurisdiction over his adjudication hearing ignores the court's holding. In *Bruggeman*, the appellant argued that the trial court lacked subject matter jurisdiction over his classification hearing as a sexual predator because the judge never received a recommendation from the ODRC before it scheduled the hearing. The Ohio Supreme Court held that: "Judge Ingraham can determine at the scheduled hearing whether the statutory prerequisite of an ODRC recommendation

has been met, and it is premature to presume that he will proceed unlawfully. Therefore, Judge Ingraham *does not patently and unambiguously lack jurisdiction to proceed,* and Bruggeman has an adequate remedy by appeal to contest any subsequent adverse judgment." *Bruggeman,* 87 Ohio St.3d at 232, 718 N.E.2d at 1288 (emphasis added). Contrary to Mr. Miller assertion, the *Bruggeman* court did not *per se* decide that a judge lacks subject matter jurisdiction over a sexual predator hearing before the ODRC submits its recommendation to the court. To the extent that Mr. Miller seeks to enjoin the court from holding a classification hearing based on any defective recommendation from the ODRC, the claim lacks merit.

■ With regard to his claim that the prosecutor's failure to appeal Judge Reed's order dismissing the hearing based on State v. Cook, is a *res judicata* bar to any future hearing, the Ohio Supreme Court addressed that question when it affirmed the dismissal of his writ of prohibition. The court stated: "Notwithstanding Miller's claims to the contrary, 'res judicata is not a basis for prohibition because it does not divest a trial court of jurisdiction to decide its applicability and it can be raised adequately by post judgment appeal.' *State ex rel. Soukup v. Celebrezze* (1998), 83 Ohio St.3d 549, 550, 700 N.E.2d 1278, 1280, citing *State ex rel. Smith v. Smith* (1996), 75 Ohio St.3d 418, 420, 662 N.E.2d 366, 369, and *State ex rel. Lipinski v. Cuyahoga Cty. Court of Common Pleas, Probate Div.* (1995), 74 Ohio St.3d 19, 21, 655 N.E.2d 1303, 1305–1306." *Miller,* 87 Ohio St.3d at 160, 718 N.E.2d 428, 429.

■ Mr. Miller has failed to state a due process violation under the Fifth or Fourteenth Amendment. It is axiomatic that "[t]he Fourteenth Amendment prohibits state actors from depriving an individual of life, liberty, or property without due process of law." *Bailey v. Floyd County Bd. of Educ.,* 106 F.3d 135, 140–41 (6th Cir.1997). The threshold inquiry, therefore, in any alleged due process violation is whether the plaintiff has lost a protected property or liberty interest. In an analogous case involving a challenge to the constitutionality of Tennessee's sexual predator statute, the Sixth Circuit recently held that there was no liberty interest in being free from having to register as a sex offender or from public disclosure of registry information. *Cutshall v. Sundquist,* 193 F.3d 466, 478 (6th Cir.1999). Mr. Miller has not indicated to this court what liberty interest he believes is at stake beyond his failed attempt to challenge the Act on First and Ninth Amendment grounds.

Additionally, the plaintiff's numerous references to the *Hendricks* decision are unavailing. The case is quite distinguishable as it involved an individual's due process rights during an involuntary commitment proceeding as an adjudged sexual offender. The Supreme Court's holding rested on the constitutional principle that "the state cannot hold and physically punish an individual except in accordance with due process of law." *Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). However, Mr. Miller has not argued and the Act does not set forth any form of physical restraint.[3] *See e.g. Cutshall,* 193 F.3d at 478 (where Tennessee Act involved no physical restraint, it did not implicate plaintiff's liberty interest in being free from punishment without

---

**3.** It is Mr. Miller's expressed desire that Ohio redraft the Act to comport with his perception that the Supreme Court has held that 'involuntary civil commitment' is the only means through which sexually violent predators can be afforded due process. *See Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

due process of law). Therefore, without the implication of a liberty interest or punishment, the plaintiff has not presented a colorable due process claim. Finally, plaintiff provides no indication of how the Act might violate equal protection.

Accordingly, this action is dismissed under section 1915A. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

---

**4.** 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.