**Paul LYN and Jamroc Café, Inc.,**
**Plaintiffs–Appellants,**

v.

**INCORPORATED VILLAGE OF HEMPSTEAD, James A. Garner, Jody Edmondson, Wayne J. Hall, Sr., Perry Pettus, Don Ryan, Carol Riddick, James Russo, Sgt. Kearney, John "Doe" and Jane "Doe", Defendants–Appellees.**

No. 07–3287–cv.

United States Court of Appeals, Second Circuit.

Jan. 13, 2009.

**462**

Gregory Dale Abram, Hempstead, NY, for Plaintiffs–Appellants.

Laurel R. Kretzing, Garden City, NY, for Defendants–Appellees.

Present: PIERRE N. LEVAL, ROSEMARY S. POOLER and B.D. PARKER, Circuit Judges.

**SUMMARY ORDER**

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is AFFIRMED.

In a memorandum and order, dated June 28, 2007, the United States District Court for the Eastern District of New York (Hurley, *J.*), granted the defendants-appellants' motion for summary judgment. *See Lyn v. Incorporated Village of Hempstead*, 2007 WL 1876502, No. 03–CV–5041 (DRH) (E.D.N.Y. June 28, 2007). Plaintiffs–Appellants Paul Lyn and JamRoc Café, Inc. appeal.

According to the complaint, filed October 3, 2003, Paul Lyn ("Lyn") is a citizen of New York State who owns and operates JamRoc Café, Inc. ("JamRoc"), "a private club incorporated pursuant to New York State law at 45 Main Street, Hempstead, New York, which is endowed by the New York State Liquor Authority to sell alcoholic beverages daily, 'at retail for on-premises consumption,' pursuant to the Alcohol Beverage Control Law." The complaint names as defendants the Village of Hempstead, as well as eight individual named defendants, including the Mayor and Chief of Police of Hempstead (collectively "the Village").

At all times relevant to this action, Part II, Chapter 86–1 of the Code of the Village of Hempstead provided that "[i]t shall be unlawful for any person to engage in or carry on any business ... in the Village of Hempstead without first obtaining a license therefor...." Further, Chapter 86–11(E) sets forth the following ground upon which a business license may be revoked or suspended: "Conducting any business activity which is regulated by the provisions of this Code ... in such a manner as to constitute a breach of the peace or to endanger the health, safety or general wel-

fare of the public." Chapter 86–2 designates the Village Clerk as "License Commissioner" and allows the Clerk to conduct investigations concerning, *inter alia,* the revocation and suspension of licenses required by the Code. According to Chapter 86–12, the Village Clerk may initiate a license suspension by written notice to the licensee. Once a license has been suspended, Chapter 86–12(A) provides that the Village "Board of Trustees shall promptly hold a hearing concerning the facts and circumstances prompting the suspension and shall continue the suspension of the license for a fixed period of time or reinstate or revoke the license."

After obtaining a New York State liquor license and a license from the Village, Lyn began to operate JamRoc in May 1995. There is no serious dispute that, from the time it began operating, the JamRoc club and its surrounding area were the scene of numerous violent disturbances requiring a police response. In fact, the Village asserts that police records "indicate[ ] that between January 1, 2001 and January 9, 2003, the [Village] Police Department received 112 calls regarding incidents" at JamRoc. Noting that JamRoc was generally open only two nights a week, the Village contends that this amounts to "on average, at least once each night the club was open" during this time period. Lyn contends that "the bulk of the incidents occurred in a municipal parking lot adjacent to the club which is not under JamRoc's control and involved people who were not customers of JamRoc."

The incident most immediately precipitating the revocation of JamRoc's license occurred in the early morning hours of August 22, 2003. At that time, according to the affidavit of a Village police officer, "approximately 500 exiting highly intoxicated patrons of the JamRoc Café engaged in a disturbance so violent that one officer involved described it as a 'riot'. . . . These individuals were fighting, throwing bottles and four people were stabbed. The responding officers were required to call for assistance from the Nassau County Police Department in order to quell the violence." Later that same day, after learning that JamRoc was to be the site of a major "special event" three days later, and after conferring with the Village Clerk, the Village police issued Lyn a letter immediately suspending his license to operate. This was followed by the issuance of a formal suspension letter, issued by the Village Clerk, on August 25, 2003.

Besides seeking a hearing within the required ten days of the issuance of the August 22nd letter, Lyn also commenced an action in New York State Supreme Court, Nassau County, on August 29, 2003, seeking to enjoin the Village from closing JamRoc. In a decision and order, dated September 17, 2003, Justice Thomas P. Phelan denied the motion for injunctive relief and granted the Village's motion to dismiss the complaint.

A hearing on JamRoc's license revocation was held before the Village Board of Trustees on October 7, 2003. Lyn appeared at the hearing and was represented by counsel. After the introduction into evidence of numerous police reports involving JamRoc and argument by Lyn's attorney, the Board voted unanimously to uphold the revocation of JamRoc's license.

As already noted, Lyn filed the instant suit on October 3, 2003. Lyn's complaint asserts numerous federal constitutional claims as follows:

"[Plaintiffs'] fundamental constitutional rights have been violated and will continue to be violated, and the acts of defendants are chilling and deterring the free exercise rights of association, assembly, privacy, movement, the operations of a private business, the right to live, work and earn a livelihood in a

lawful calling or to pursue a lawful trade or avocation and denying the public access to assembly and liberty entitled to First, Fourth, Fifth, Eighth, Ninth, Tenth and Fourteenth Amendment protection."

The complaint also asserts a claim under 42 U.S.C. § 1983.

Judge Hurley granted the Village's motion for summary judgment on each of Lyn's constitutional claims and concluded that "[s]ince Defendants are entitled to judgment as a matter of law as to each of [the] constitutional claims upon which the § 1983 claim against the Village is predicated, this claim, too, is dismissed." *Lyn*, 2007 WL 1876502 at *17.

"We review a grant of summary judgment *de novo*." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir.2008). Lyn has waived any argument involving the Fourth, Eighth, Ninth, and Tenth Amendments. As Judge Hurley noted, Lyn's papers in the district court were "silent" as to these amendments and, in any case, "whatever unexplained metaphysical relevance any of [these] provisions may have— a problematic proposition, at best—is insufficient to affect the outcome of Defendants' Motion for Summary Judgment." *Lyn*, 2007 WL 1876502 at *16. None of the four amendments are mentioned in Lyn's briefs on this appeal, nor is any mention made of the Section 1983 claim. These claims have therefore been waived. *See Wills v. Ameranda Hess Corp.*, 379 F.3d 32, 52 (2d Cir.2004) (arguments raised below, but not mentioned on appeal, are waived). Further, Lyn also opposed summary judgment by raising arguments involving the Privileges and Immunities Clause, the Supremacy Clause, the Commerce Clause, and the Contracts Clause. Judge Hurley rejected these arguments, *Lyn*, 2007 WL 1876502, at *4–*7, and they are not raised on this appeal. They are also waived.

■ Lyn also raises two arguments on appeal which were not made before the district court: (1) that since New York State's liquor licensing law is a comprehensive regulatory scheme, it "preempts local legislation in respect to the field of regulation of plaintiffs establishment" and (2) that the police reports entered into evidence at the October 7, 2003 hearing before the Village Board of Trustees are hearsay. Because these arguments are raised for the first time on appeal, we will not consider them. *See Deegan v. City of Ithaca*, 444 F.3d 135, 144 (2d Cir.2006) (stating general rule that consideration of arguments raised for the first time on appeal is "imprudent").

Lyn appears to have properly raised four arguments on this appeal:

■ **A. Due Process: Police Power.** Lyn argues that the Village is without power to enact a licensing code because such legislation is "without reasonable relation to some purpose within the competency of [the Village] to effect." This is utterly baseless. On its face, the licensing code is an effort to protect public health and safety, and "efforts to protect public health and safety are clearly within [a] city's police powers." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 296, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).

**B. Due Process: Vagueness.** Lyn appears to have abandoned the argument made in the district court to the effect that the Village licensing code amounts to criminal legislation which must be subjected to the most exacting "void for vagueness" analysis, an argument which Judge Hurley rightly rejected. *Lyn*, 2007 WL 1876502 at *8–*9. The licensing code is plainly a civil enactment and "[l]aws with civil consequences receive less exacting vagueness scrutiny," *Arriaga v. Mukasey*, 521 F.3d 219, 223 (2d Cir.2008), because "the consequences of imprecision are less severe."

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

■ Vagueness challenges require courts to determine "whether the statute gives adequate notice, and whether it creates a threat of arbitrary enforcement." *Farrell v. Burke,* 449 F.3d 470, 485 (2d Cir.2006). We agree with the district court's determination that in light of the many reported acts of violence in the vicinity of JamRoc and Lyn's several meetings with Village officials concerning these incidents, Lyn had adequate notice that his business was being conducted in a manner which might trigger the application of Chapter 86–11 of the Village Code. *See Perez v. Hoblock,* 368 F.3d 166, 175–78 (2d Cir.2004); *Rock of Ages Corp. V. Sect'y of Labor,* 170 F.3d 148, 156 (2d Cir.1999). We also agree with the district court's conclusion that the statute as applied in this case does not pose a threat of arbitrary enforcement because the conduct involved falls "so squarely within the core" of the activity that Chapter 86–11 is designed to restrict that "no reasonable enforcing officer could doubt the law's application" to JamRoc. *Farrell,* 449 F.3d at 494.

■ **C. Due Process: Arbitrary Enforcement.** In the context of an administrative action, such as the license revocation at issue here, due process may be violated by action "so outrageously arbitrary as to constitute a gross abuse of government authority." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999). On the other hand, "[o]verzealous or erroneous government action alone does not give rise to a constitutional violation." *Interport Pilots Agency, Inc. v. Sammis,* 14 F.3d 133, 145 (2d Cir.1994).

The Village's action was not outrageous, let alone overzealous. Lyn does not deny the occurrence of severe security problems at JamRoc; in fact, he admits that he met with Village officials in order to alleviate them. Further, the only actions mentioned by Lyn as evidence that the Village had targeted him for enforcement are that the Village "placed Department of Public Works vehicles at municipal parking lot entrances adjacent to plaintiffs['] business premise under the guise of controlling ingress and egress to the parking lot" and that the Chief of Police had " 'warned' that he (Lyn) could not continue to operate [his] business." [1] These discrete instances, even if viewed in the light most favorable to Lyn, do not amount to an arbitrary pattern of enforcement. *See Jammin Entertainment Complex v. City of New York,* 2007 WL 2292998, No. 07–CV–2342 (NGG) (E.D.N.Y. Aug. 9, 2007) (denying injunctive relief to nightclub operators in spite of alleged campaign of police harassment, of more than two years duration, involving, inter alia, roadblocks, false ticketing, and false arrest).

**D. First Amendment.** Correctly relying upon *City of Dallas v. Stanglin,* 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989), Judge Hurley found that the revocation of JamRoc's license implicated no cognizable First Amendment concerns. In that case, the Supreme Court upheld a municipal ordinance which restricted admission to certain dance halls to persons aged 14 to 18. *Id.* at 21, 109 S.Ct. 1591. Rejecting a challenge to the ordinance based upon the contention that it limited "associational" rights protected by the First Amendment, the Court noted that the ordinance limits

---

**1.** Lyn does not note that he testified at his deposition that the tactic of having police cars in the parking lot was one he discussed with Village officials in June or July 2003. Fur-

ther, in his affidavit, the Chief of Police avers that he warned Lyn "that he could not continue to operate his business *in this manner.*"

minors' ability to dance with adults who may not attend, and it limits the opportunity of such adults to dance with minors. These opportunities might be described as "associational" in common parlance, but they simply do not involve the sort of expressive association that the First Amendment has been held to protect. The hundreds of teenagers who congregate each night at this particular dance hall are not members of any organized association; they are patrons of the same business establishment. Most are strangers to one another, and the dance hall admits all who are willing to pay the admission fee.

*Id.* at 24–25, 109 S.Ct. 1591; *see also NYC C.L.A.S.H., Inc. v. City of New York*, 315 F.Supp.2d 461, 475 (S.D.N.Y.2004) (smokers challenging municipal bans upon smoking in bars and restaurants possessed no associational rights because they, "like the teenagers in *Stanglin*, also do not regularly gather in bars and/or restaurants as an organization of smokers or in pursuit of a common goal").

■ *Stanglin* controls here. Lyn asserts that the Supreme Court has afforded First Amendment protection to "theatrical productions" and "dancing," and that he himself may be considered an "event organizer" who possesses First Amendment rights. The fact remains, however, that the government may restrict even protected speech by means of narrowly tailored regulations which serve to promote some legitimate purpose. *See generally Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). It is beyond cavil that the prevention of violence, such as regularly occurred at Jam-Roc, is a legitimate government purpose and Lyn makes no effort to show that the Village licensing regulations are not a permissible attempt to fulfill this purpose.

For the reasons stated above, the judgment the district court is hereby AFFIRMED.