**Miguel RAMOS, Plaintiff**

v.

**CITY OF MIAMI, and others,
Defendants**

Civil Action No. 14–24628–Civ–Scola

United States District Court,
S.D. Florida.

Signed July 17, 2015

Entered July 20, 2015

Leonard Paul Fenn, Defabio & Fenn, P.A., Coral Gables, FL, for Plaintiff.

Christopher Allan Green, Miami City Attorney's Office, Miami, FL, Oscar Edmund Marrero, Lourdes Espino Wydler, Marrero & Wydler, Coral Gables, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS

Robert N. Scola, Jr., United States District Judge

Plaintiff Miguel Ramos has sued Defendants City of Miami, Officer Marc Redon-

do, Sergeant Jean Guillot, and Chief of Police Manuel Orosa under 42 U.S.C. § 1983 for violations of his constitutional rights and under Florida law for false arrest and battery. (Compl., ECF No. 1). In Count 3, Plaintiff alleges a violation of his constitutional right to assemble peaceably. (Compl. ¶¶ 43–46, ECF No. 1). Defendants Redondo and Guillot (collectively, "Defendants") move to dismiss Count 3 of Plaintiff's Complaint, arguing that Plaintiff fails to state a claim upon which the Court may grant relief. (Defs.' Mots. Dismiss, ECF Nos. 23, 26). Plaintiff has responded, (Pl.'s Resp., ECF No. 27), and Defendants have replied. (Defs.' Repls., ECF Nos. 28, 29). For the reasons set forth in this Order, the Court grants Defendants' Partial Motions to Dismiss.

### 1. Background

This matter arises from Ramos's arrest during the early morning hours of November 1, 2012, amidst Halloween celebrations, at the CocoWalk outdoor shopping mall in Miami, Florida. (Compl. ¶ 14, ECF No. 1). At the time of the arrest, the streets throughout CocoWalk were congested with people during "what was essentially a block party." (Id. at ¶ 15). Ramos alleges that while he was lawfully crossing the street in this area, several police officers, including Defendants Redondo and Guillot, "violently rushed" at him, "crashed into [his] back," warned him several times to move, and eventually handcuffed him and violently threw him to the ground. (Id. at ¶¶ 17–22). Ramos further alleges that three or four officers, including Defendants, beat him about the head, neck, ribs, and back while he was handcuffed and defenseless on the ground. (Id. at ¶ 23). Ramos claims that other officers formed a circle by linking elbows in order to shield the beating from public scrutiny. (Id. at ¶ 24).

Ramos alleges that his arrest and beating were unprovoked, (see generally Compl., ECF No. 1), and that he "never attempted to resist, or influence or inflame the crowd attracted by the police." (Id. at ¶ 27). Ramos was arrested for Battery on a Law Enforcement Officer, but never charged, as "no officers, including Defendant Officers, ever appeared at the required pre filing [sic] conference at the State Attorney's office to present evidence justifying the arrest or the filing charges." (Id. at ¶ 30).

### 2. Legal Standard

A plaintiffs civil complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Moreover, in order to survive dismissal under Federal Rules of Civil Procedure Rule 12(b)(6), a plaintiffs complaint must include plausible factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. For the purposes of a motion to dismiss under Rule 12(b)(6), a court may accept the facts of the complaint as true, but need not accept the plaintiffs legal conclusions. Id.

To plead a claim under § 1983, a plaintiff must allege that a defendant, while acting under color of state law, deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. These rights and privileges are not "governed by a single generic standard," but must be pled in accordance with

a specific constitutional right or provision. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, the first inquiry into a § 1983 suit is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Conclusory allegations that a defendant violated § 1983 or "infringed upon one's civil rights" are legally insufficient to state a claim upon which relief can be granted. *See, e.g., Afkhami v. Carnival Corp.,* 305 F.Supp.2d 1308, 1328 (S.D.Fla. 2004) (Altonaga, J.) (allegation that "Defendant violated Plaintiffs' civil rights," without more, was insufficient to state a cause of action under § 1983).

### 3. Analysis

■ Ramos's allegations—taken as true—do not demonstrate a First Amendment violation. First, as the United States Supreme Court has recognized, the First Amendment does not protect "a generalized right of 'social association' that includes chance encounters. . . ." *City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). Therefore, while "[i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall ... such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Id.*

■ The factual circumstances of Ramos's arrest are identical to the hypothetical presented by the Supreme Court: Ramos, at the time of his arrest, was walking down the street in an outdoor shopping mall, perhaps going to meet friends. (*See* Compl. ¶ 14, ECF No. 1). Ramos does not suggest that he was engaged in public expression of religion, politics, or griev-

ances, or that his arrest was in retaliation for any of these practices. (*See generally* Compl., ECF No. 1). Accordingly, even assuming that his arrest was wrongful—in other words, effectuated without probable cause or with excessive force—he is not protected by the First Amendment in this instance. *See Stanglin,* 490 U.S. at 25, 109 S.Ct. 1591. To plead a First Amendment retaliation claim under § 1983, Ramos would have to allege "(1) that his speech or act was constitutionally protected, (2) that the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) that there is a causal connection between the retaliatory actions and the adverse effect on the protected speech or act." *Battiste v. Lamberti,* 571 F.Supp.2d 1286, 1299 (S.D.Fla.2008) (Huck, J.). Ramos does not address these elements with specific allegations, but only proffers the legal conclusion that Defendants "violated [his] right to peaceably assemble by illegally arresting [him]." (Compl. ¶ 45, ECF No. 1).

Typically, the Constitution offers protection from wrongful arrests through the Fourth Amendment, which prohibits "unreasonable searches and seizures." U.S. Const. amend. IV; *see also Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir. 1996): ("A warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim.") (citing *Marx v. Gumbinner,* 905 F.2d 1503, 1505 (11th Cir.1990)). Moreover, as courts in other circuits have recognized, a First Amendment claim is not coextensive with a Fourth Amendment false arrest claim:

> The two constitutional claims are distinct: not every Fourth Amendment claim triggers a coordinate First Amendment claim. The fact that the arrested party might have been on public property at the time of a wrongful ar-

rest (i.e., an arrest absent probable cause), the fact that he may have been meeting someone or someone may have observed him at the time of the arrest, does not automatically transform a Fourth Amendment claim into a First Amendment claim. It takes more to make a First Amendment claim than merely being arrested on space that may be a public forum.

*Tsitsoulis v. Twp. of Denville*, No. CIV. A. 2:07–4544, 2009 WL 5205276, at *9 (D.N.J. Dec. 23, 2009); *see also Rattner v. Netburn*, 930 F.2d 204, 208 (2d Cir.1991) ("In order to prevail on a First Amendment claim under 42 U.S.C. § 1983, 'a plaintiff must demonstrate that his conduct; is deserving of First Amendment protection and that the defendants' conduct of harassment was motivated by or substantially caused by his exercise of free speech.' ") (quoting *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987)). Here, Ramos fails to demonstrate that his conduct on the night of his arrest was "deserving of First Amendment protection" or that Defendants' conduct "was motivated by or substantially caused by his exercise of free speech." *Id.* Ramos's mere presence in a public place, without more, does not trigger First Amendment protection, even when the public place is crowded with partygoers and Halloween festivities.

Therefore, Count 3 of Ramos's Complaint does not include a claim upon which the Court may grant relief. Ramos must plead a claim under 42 U.S.C. § 1983 in accordance with a specific constitutional right or provision. He has failed to properly allege a violation of his First Amendment right to assemble peaceably.

### 4. Conclusion.

The Court **grants** Defendants' Partial Motions to Dismiss and **dismisses without prejudice** Count 3 of Ramos's Complaint. If Ramos wishes to replead, he must do so by **July 30, 2015.**

**Done and ordered,** at Miami, Florida, on July 17, 2015.