**MOTOR VEHICLE COMMISSION,**
Commonwealth of Kentucky,
Appellant,

v.

The **HERTZ CORPORATION** and Avis
Rent A Car System, Inc., Appellees.

No. 88–CA–874–S.

Court of Appeals of Kentucky.

March 24, 1989.

Dandridge F. Walton, Frankfort, for appellant.

Mark Overstreet, Stites & Harbison, Frankfort, for Hertz Corp.

Holliday Hopkins Thacker, Richard Northern, Wyatt, Tarrant & Combs, Louisville, for Avis Rent A Car System, Inc.

Before DYCHE, HOWARD and McDONALD, JJ.

HOWARD, Judge.

This is an appeal by the Motor Vehicle Commission ("Commission") from summary judgment declaring its off-site sales regulation, as originally promulgated and as amended, unconstitutional. Under 605 KAR 1:150, the Commission attempted to regulate the sale of vehicles by established dealers that occur at temporary or off-site locations.

The regulation, as originally promulgated, became effective on October 9, 1984. Seven days later, on October 16, 1984, the Hertz Corporation filed suit against the Commission challenging the constitutionality of the regulation. On February 11, 1985, Avis entered the suit as intervening plaintiff. After a period of discovery, all three parties to the action moved for summary judgment.

The Franklin Circuit Court granted appellees'/plaintiffs' motion on January 27, 1987, and issued a permanent injunction barring the enforcement of the regulation. However, unbeknownst to the court, the Commission had amended certain sections of the regulation in 1986. This was brought to the court's attention and the Commission moved the court to reconsider its decision in light of the amendments. The court granted the motion, reconsidered its order, and, on March 29, 1988, issued its final ruling. The court found the regulation, as amended, to be unconstitutional and reaffirmed and readopted its order of January 28, 1987. The Commission now appeals both rulings.

Off-site sales of motor vehicles have become increasingly common in recent years. Several established dealers may join forces and hold a sale at a temporary location away from their usual places of business or the sale may be conducted in conjunction with a credit union or other lending institution.

The regulation, as amended, restricts off-site sales in two significant ways: 1) the sale may only be held in the municipality or county in which the dealer's established place of business is located, and 2) the Commission's power to arbitrarily grant or

deny a temporary sales location permit appears to be unfettered as the regulation contains no standard governing this authority. The trial court found the regulation as a whole to be invalid for lack of any legitimate purpose and further found several key provisions of the regulation to be individually unconstitutional.

When the validity of an administrative regulation is challenged in court, KRS 13A.140 places the burden of proof on the promulgating agency to show:

(1) That the administrative body possessed the authority to promulgate the administrative regulation;

(2) That the administrative regulation is consistent with any statute authorizing or controlling its issuance;

(3) That the administrative regulation is not in excess of statutory authority;

(4) That the administrative regulation is not beyond the scope of legislative intent or statutory authority;

(5) That the administrative regulation is not violative of any other applicable statute;

(6) That the laws and administrative regulations relating to promulgation of administrative regulations were faithfully followed....

In its regulatory impact statement, the Commission states that the purpose of 605 KAR 1:150 is to prevent "frauds, impositions and other abuses upon the citizens of the Commonwealth." KRS Chapter 190 governs the sale of motor vehicles and the above quoted language of regulatory purpose was derived verbatim from KRS 190.-015 in which the General Assembly defined the public policy behind KRS Chapter 190. Also in the chapter, the Commission is empowered and required to promulgate appropriate and reasonable regulations to carry out the provisions of the chapter.

The trial court found this stated purpose not to be the true purpose of the regulation and we must agree. The regulatory impact statement, as published in the Kentucky Administrative Register, makes no mention of any consumer complaints concerning off-site sales and the minutes of the Commission meetings contain little if any reference

to or discussion of this matter. No facts or figures were cited and no study, report or document was presented to indicate that off-site sales have caused or are likely to cause the kind of ills mentioned in the regulatory impact statement.

Rather, the court found the true purpose of the regulation to be anti-competitive in nature. The Commission is made up primarily of dealers of new and used vehicles and the minutes show their principal concern to be elimination of the competition caused by appellees in the used car market. Not surprisingly, the most ardent proponents of the regulation were the Commissioners who own or are associated with car dealerships. The minutes, which are actually verbatim transcripts, contain a statement by one Commissioner that the proposed regulation is a way to "effectively kill the Hertz and Avis thing." The minutes clearly indicate that the Commission intended the regulation to prevent appellees from using off-site sales as a means to rid themselves of their used car fleets. There are also references to the car dealers of the state being very much opposed to the off-site sales conducted by appellees. The overriding tenor of the Commission's discussions was toward stifling this unwanted competition.

Section 2 of the Kentucky Constitution prohibits the exercise of absolute and arbitrary power over the lives, liberty and property of free men. This section has been interpreted to mean that a legislature, or a body acting under legislative authority, may not, "under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupation or impose unreasonable or unnecessary restrictions on them. The regulation of a lawful business is dependent upon some reasonable necessity for the protection of health, safety, morality or other phase of the general welfare...." *U.S. Mining and Exploration Co. v. City of Beattyville,* Ky., 548 S.W.2d 833, 834 (1977). An exercise of executive authority to promulgate regulations "must have a substantial basis and cannot be made a mere pretext

for actions that do not come within its scope." *Bond Brothers v. Louisville and Jefferson County Metropolitan Sewer District*, 307 Ky. 689, 211 S.W.2d 867 (1948).

In *General Electric Co. v. American Buyers Cooperative*, Ky., 316 S.W.2d 354 (1958), the validity of the Kentucky Fair Trade Act was in question. Under the Act, a retailer was prohibited from selling trademark merchandise at a price less than the minimum retail price specified in a fair trade contract even though the retailer was not a party to the contract. In striking down the provision as violative of Section 2 of our Constitution, Kentucky's highest court concluded that there was no substantial basis for regulating the sale of trademark merchandise especially where the effect was to impede competition.

The Kentucky Supreme Court has more recently stated that "no board or officer vested with governmental authority may exercise [that authority] arbitrarily." *Kentucky Milk Marketing and Antimonopoly Commission v. Kroger Co.*, Ky., 691 S.W.2d 893, 899 (1985). It was further held that "an arbitrary interference with the free flow of commerce—the free enterprise system— ... is not justified or to be justified by the public power of the state. It is clearly a violation of the letter and spirit of Section 2 of our Bill of Rights." *Id.* at 900.

We must agree with the conclusion of the trial court that the Commission had no legitimate basis for promulgating the regulation in question. The purported purpose of preventing fraud was merely a pretext for the real purpose of eliminating unwanted competition. And, on the basis of the above cited authority, the illegitimate anti-competitive purpose rendered the regulation arbitrary and an unjustified interference with the free flow of commerce in violation of Section 2 of the Kentucky Constitution.

The trial court further found several sections of the regulation to be unconstitutional in and of themselves. Section 1 stated, in its original form, as follows: "The li-

censor may issue, at its discretion, for good cause shown, a temporary sale location permit for the purpose of a limited sales promotion as provided herein." In its amended form, the words "at its discretion, for good cause shown" were deleted. The trial court found, and we agree, that the amended version is merely a change in form but not substance. Under either version, the Commission has the unfettered discretion to grant or deny the requested license regardless of whether or not the applicant has satisfactorily complied with all the requirements of the regulation. In the original version, the discretion is explicit and in the amended version, it merely becomes implicit. Because there are no standards, much less meaningful standards, contained in the regulation to govern the exercise of this discretionary power, it is arbitrary and violative of Section 2 of the Kentucky Constitution. *Turner v. Peters*, Ky., 327 S.W.2d 958 (1959).

Section 3 of the regulation required, in its original form, the off-site sale to be conducted by two or more dealers licensed in the same municipality or county, thus prohibiting off-site sales conducted by a single dealer or jointly by two or more dealers from different municipalities or counties. This requirement was deleted from the amended version of the regulation so we need not now address its relative merits.

Finally, Section 4 of the regulation prohibits dealers from participating in an off-site sale outside the municipality or county in which their established place of business is located. This restriction went unchanged during the amendment process. This requirement bears no relationship to the purported purpose of the regulation. The Commission was unable to produce any evidence whatsoever that the prevention of fraud reasonably necessitated this restriction. It too, therefore, is an arbitrary exercise of power. *U.S. Mining and Exploration Co., supra.*

The rationale for promulgating the incredibly narrow and restrictive require-

ments of sections 3 and 4, as well as the reservation of sweeping unfettered discretion in the granting or denial of permits in section 1, becomes clear when the Commission's anti-competitive purpose is considered.

The judgment of the Franklin Circuit Court is affirmed.

All concur.