

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NOS.  2-08-070-CR**
**2-08-071-CR**
**2-08-072-CR**
**2-08-073-CR**
**2-08-074-CR**


MARIO RICO MARTINEZ                                     APPELLANT

V.

THE STATE OF TEXAS                                         STATE

\-\-\-\-\-\-\-\-\-\-\-

FROM COUNTY COURT AT LAW NO. 2 OF WICHITA COUNTY

\-\-\-\-\-\-\-\-\-\-\-

## MEMORANDUM OPINION[1]

\-\-\-\-\-\-\-\-\-\-\-

## I.    Introduction

Appellant appeals five convictions under Texas Penal Code section 71.021 for violations of civil injunctions entered under the Texas "gang

---

[1] *See* Tex. R. App. P. 47.4.

injunction statute." Tex. Civ. Prac. & Rem. Code Ann. § 125.065 (Vernon 2005). In four points, he argues that Texas Penal Code section 71.021 is unconstitutionally overbroad and vague on its face; that Texas Civil Practice and Remedies Code section 125.065(a)(2) violates the separation of powers doctrine by allowing district judges to order reasonable restrictions to enforce section 71.021; and that individual provisions of the injunction are unconstitutionally vague and overbroad. We affirm.

## II. Factual and Procedural Background

Appellant was charged by information in five separate cause numbers with violations of two gang injunctions: a temporary injunction entered on September 14, 2006, against twenty-one members of the Varrio Carnales (VC) street gang and a permanent injunction entered against the same parties on April 6, 2007, by the 89th District Court of Wichita County, Texas. The court ordered the injunctions under section 125.065 of the civil and practice remedies code. Tex. Civ. Prac. & Rem. Code Ann. § 125.065. This section provides that a trial court can enter a temporary or permanent injunction against a criminal street gang member based on the finding that gang activity is a public nuisance. *See id.* Section 125.065 states,

> (a) If the court finds that a combination or criminal street gang constitutes a public nuisance, the court may enter an order:

> (1) enjoining a defendant in the suit from engaging in the gang activities of the combination or gang; and
>
> (2) imposing other reasonable requirements to prevent the combination or gang from engaging in future gang activities.
>
> (b) If the court finds that a place is habitually used in a manner that constitutes a public nuisance, the court may include in its order reasonable requirements to prevent the use of the place for gang activity.

*Id*.

The temporary and permanent injunctions outlined a safety zone comprising 1.54 square miles called the "VC Safety Zone #1" (Safety Zone) in an area of Wichita Falls known for its heavy gang activity. The injunctions at issue prohibited 29 acts by Appellant while he was within the Safety Zone.[2] The lists included illegal acts, such as vandalism and possession of illegal drugs, but also otherwise-legal activities, such as being seen in public with any other member of the VC gang and wearing specific clothing denoting gang membership.

On December 13, 2006, Wichita Falls police officers Foster and Sanchez observed Appellant making hand gestures with his middle and ring fingers, which they believed to be gang signs, a violation of provision 16 of the

---

[2] The temporary injunction prohibited 29 acts, but the permanent injunction reduced the restrictions to 26 acts.

3

temporary injunction. On January 2, 2007, Officers Esteves and Saenz observed Appellant riding as a passenger in a vehicle driven by another person named in the temporary injunction, a violation of provision 2 of that injunction. On February 20, 2007, Officer Smyth observed Appellant, within the Safety Zone, sitting in a lawn chair on the property of a fellow VC gang member along with two defendants named in the temporary injunction, a violation of provisions 2 and 29 of that injunction. On April 25, 2007, Officers Esteves and Saenz observed Appellant riding in a vehicle with other known gang members, a violation of provision 2 of the permanent injunction. Finally, on September 6, 2007, Officers Hogan and Montana observed Appellant on the street wearing clothes that identified him as a member of the VC gang, a violation of provision 15 of the permanent injunction. The officers arrested Appellant based on these violations, and the State charged him by information, in all five cases, with knowingly violating the injunction orders, a Class A misdemeanor under Texas Penal Code Section 71.021. Section 71.021, entitled "Violation of Court Order Enjoining Organized Criminal Activity," states,

> (a) A person commits an offense if the person knowingly violates a temporary or permanent order issued under Section 125.065(a) or (b), Civil Practice and Remedies Code.

> (b) If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections.

4

(c) An offense under this section is a Class A misdemeanor.

Tex. Penal Code Ann. § 71.021 (Vernon 2008).

Appellant filed a pretrial motion to dismiss, arguing that Texas Penal Code section 71.021, Texas Civil Practice and Remedies Code Section 125.065, and the injunctive provisions are unconstitutional. The trial judge overruled the motion. Appellant agreed to a plea bargain and pleaded guilty to all five offenses, which resulted in a sentence of 305 days of confinement and a $4,000 fine for each offense, punishment running concurrently. The trial court certified Appellant's right to appeal matters which were raised by written motion and ruled on before trial. Appellant now appeals based on this limited right.

## III.    Appellant's First Three Points

In his first three points, Appellant argues that section 71.021 is unconstitutionally overbroad and vague on its face. Appellant also argues section 125.065(a)(2) violates the separation of powers doctrine by allowing district judges to order "reasonable restrictions" by civil injunctions that are enforced by criminal prosecutions under 71.021 of the penal code, thereby creating new criminal laws. This court recently rejected identical arguments with respect to the same statutes. *See Goyzueta v. State*, 266 S.W.3d 126,

5

130–37 (Tex. App.—Fort Worth, no pet. h.). *Goyzueta* involved the very same injunction that Appellant now challenges. *Id*. at 129. For the same reasons articulated in our opinion in that case, we reject Appellant's arguments regarding the constitutionality of penal code section 71.021 and the alleged violation of separation of powers in civil practice and remedies code section 125.065. *See id.* We overrule Appellant's first, second, and third points.

## IV. Constitutionality of the Injunctive Provisions

In his fourth point, Appellant argues that the injunctions' specific provisions that he was charged with violating are unconstitutionally vague and overbroad, threatening his freedom of association and speech. We will analyze each of the relevant provisions in turn.

### A. Associating with and entering the property of other gang members

Provision 2[3] of the permanent injunction prohibits Appellant from "associating, standing, sitting, walking, driving, bicycling, gathering or appearing anywhere in public view with any other Defendant herein, with any other individual who the Defendant knows is a member of the VC, or with other

---

[3] Provision 2 of the temporary injunction is substantially similar but has a textual difference that we will address in a later section.

known members of any other street gang." Provision 29[4] of the temporary injunction prohibits Appellant from "entering on to the property of another Defendant who is a party to this lawsuit or any other individual who Defendant knows is a member of the VC" at any location in Wichita County.

### 1. Overbreadth and right of association

We first examine the overbreadth argument. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1982) (stating that a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct).

Appellant argues that provision 2 of both injunctions is overbroad because of the associational restriction. He argues that both provisions 2 and 29 broadly sweep over the First and Fourteenth Amendments' right of association by preventing him from appearing in public with a gang member for social and political purposes or even with a gang member relative.

### Applicable Law

A law is impermissibly overbroad if, in addition to proscribing activities that may be constitutionally prohibited, it sweeps within its coverage speech or conduct protected by the First Amendment. *Bynum v. State*, 767 S.W.2d

---

[4] Provision 29 of the temporary injunction is identical to Provision 26 of the permanent injunction.

7

769, 772 (Tex. Crim. App. 1989). An overbreadth challenge will succeed if the law reaches a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates*, 455 U.S. at 494, 102 S. Ct. at 1191.

There are two types of associations entitled to First Amendment protection: those with intrinsic or "intimate" value and those that are "instrumental" to forms of political or religious expression or activity. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18, 104 S. Ct. 3244, 3249–50 (1984). Intimate associations include those that "attend the creation and sustenance of a family" such as marriage and childbirth and those that have "such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id*. at 619-20, 104 S. Ct. at 3250. Instrumental associations include associating with others "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id*. at 622, 104 S. Ct. at 3252. The Supreme Court has stated that the Constitution does not recognize a generalized right of "social association." *City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S. Ct. 1591, 1595 (1989). The Court added that it is possible to find some "kernel of expression" in many activities, including "walking down the street or meeting one's friends at a shopping mall, but such a kernel is not sufficient to bring the activity within the protection of

8

the First Amendment." *Id*., 109 S. Ct. at 1595. Additionally, the Court has stated that "First Amendment [protection] does not extend to joining with others for the purpose of depriving third parties of their lawful rights." *Madsen v. Women's Health Ctr., Inc*., 512 U.S. 753, 776, 114 S. Ct. 2516, 2530 (1994).

**Analysis**

Unlike statutes which are potentially applicable to all persons, gang injunctions apply only to those creating a "public nuisance." Section 125.062 states that "a combination or criminal street gang that continuously or regularly associates in gang activities is a public nuisance." Tex. Civ. Prac. & Rem. Code § 125.062 (Vernon 2005). Thus, those involved in the public nuisance are not general members of the public but are active participants in a gang. *See id.* §§ 125.062, 125.065(a). Further, gang injunctions are enforceable only against individuals who "knowingly" violate an injunction provision. Tex. Penal Code Ann. § 71.021(a).

Looking at the association prohibited here, the gatherings within the zone do not fit the category of intimate associations, as VC is a large group that does not outwardly appear to have family-related motivations. *See Roberts*, 468 U.S. at 620, 104 S. Ct. at 3250. The gatherings do not fall into the instrumental association category, either, as the group does not appear to meet

9

in public for political, economic, educational, religious, or cultural purposes. *Cf. Roberts*, 468 U.S. at 622, 104 S. Ct. at 3252 (noting that the Jaycees, a nonprofit civic organization, fell under the category of an instrumental association). As to Appellant's argument that VC gang members meet for social purposes, the Supreme Court has previously stated that social associations are not recognized as protected associations under the First Amendment. *See Stanglin*, 490 U.S. at 25, 109 S. Ct. at 1595. In this case, the VC social association rose to the level of a public nuisance, which is why the injunctions were issued.

The temporary injunction plainly states that the Safety Zone and injunctive restrictions are in place to prevent gang-related criminal activity by VC members. Based on the characteristics of the association at issue, VC members do not fall within any of the First Amendment's protected classes of association. *See People ex rel. Gallo v. Acuna*, 929 P.2d 596, 613, 615 (Cal.), *cert denied,* 521 U.S. 1121 (1997) (rejecting overbreadth challenge to gang injunction and upholding an injunctive restriction that prohibited appellant from "standing, sitting, walking, driving, gathering or appearing anywhere in public view" "with any other known VST [gang] member").

Appellant argues that the association prohibition in the injunction does not take family members into consideration. While it is true that if Appellant has

10

gang member relatives the injunction restricts him from associating with them, the injunction does clarify that this restriction applies only when the parties are in *public view*, and it provides exceptions to the restriction for school obligations and for minors in the company of a parent or guardian. Creating an outright exception to the injunction for familial association in the Safety Zone could make the injunction less effective for dealing with the collective nature of gang activity. *See People v. Englebrecht*, 106 Cal. Rptr. 2d 738, 758 (2001) (holding that "any liberalization of the injunction to try to allow greater familial contact in the target area would limit the effectiveness of the injunction"). Based on the type of association prevented, we hold that injunctive provision 2 of the temporary and permanent injunctions and provision 29 in the temporary injunction do not restrict a substantial amount of constitutionally protected conduct. We overrule Appellant's overbreadth challenge regarding those provisions.

### 2. Vagueness of terms

Appellant argues that provisions 29 and 2 are vague because they violate the principle that ordinary people must be able to understand what conduct is prohibited. He argues that the restricted addresses in provision 29 are too vague to inform him of the injunction's boundaries and that provision 2 is vague regarding persons he cannot appear with in public.

11

**Applicable Law**

The void-for-vagueness doctrine states that a law is void if it fails to define the criminal offense with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement." *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007). If the law does not substantially implicate constitutionally protected conduct, it is valid unless it is impermissibly vague in all applications. *Village of Hoffman Estates*, 455 U.S. at 495–96, 102 S. Ct. at 1192. A scienter requirement in a statute alleviates concerns of vagueness. *Gonzales v. Carhart*, 127 S. Ct. 1610, 1628 (2007).

**Analysis**

Appellant argues that provision 29 is vague due to the lack of a list of specific addresses that he cannot enter and because the provision's geographical scope is "confusing." But provision 29 prohibits Appellant from "knowingly" entering property of "another Defendant who is a party to this lawsuit or any other individual who the Defendant knows is a member of the VC." Thus, Appellant will only violate this provision if he has knowledge that the property is that of a party to the lawsuit or a VC gang member.

Appellant had notice that he could not knowingly enter the VC gang member properties because both the temporary injunction listed him as a

12

defendant and specifically listed the other defendants. Appellant was not prohibited from entering the Safety Zone itself or various other neighborhoods within Wichita County; rather, he could not enter the property of specifically listed defendants and persons known to him as VC gang members. The text of provision 29 is not so difficult that an ordinary person could not understand it; it specifies that Appellant could not enter known gang member properties or properties belonging to specifically listed persons, preventing arbitrary and discriminatory police enforcement.

Appellant also argues that provision 2 is vague because it appears to prohibit Appellant's entire presence within the Safety Zone without providing guidelines for his behavior while in that zone. Provision 2 clearly describes what he cannot do within the Safety Zone and persons he cannot be seen with in public. The injunctions both state with specificity the outer boundaries of the Safety Zone, including major street names, block numbers, and distance included from the curb line. The Safety Zone clearly encompasses the area where VC members are a public nuisance: the injunction states that "unless enjoined, the Defendants will continue to use the 'VC Safety Zone #1' for the purposes of engaging in organized criminal activity as well as other gang related

13

conduct."  The injunction largely proscribes conduct within these boundaries;[5] the police therefore had clear guidelines for arrests for injunction violations and could not arbitrarily arrest Appellant within the Safety Zone.  *Cf. Chicago v. Morales*, 527 U.S. 41, 64, 119 S. Ct. 1849, 1863 (1999) (holding loitering ordinance unconstitutionally vague due to the vast police discretion in ordering dispersal of any person).

Appellant also argues that provision 2 of the temporary injunction is unconstitutionally vague because it prevents him from appearing in public within the Safety Zone with anyone "charged with a criminal offense."  He argues this clause is not accompanied with guidelines to prevent arbitrary and discriminatory enforcement.  If Appellant actually had been charged with violating this clause, we may have been presented with a different question because the phrase is expansive regarding what persons are off-limits from public encounters.  The phrase could include persons charged with offenses not known to Appellant, allowing a potential arrest when Appellant had no notice that he was violating the injunction.  However, Appellant was not arrested under this clause of the injunctive provision.  Appellant was arrested twice for

---

[5] Provision 29 of the temporary injunction and 26 of the permanent injunction prohibit Appellant from entering VC and listed defendants' properties within Wichita County.

violating provision 2 by appearing in public with other persons named as defendants in the temporary injunction. This clause was not even included in the permanent injunction now in place. Thus, Appellant does not have standing to challenge this clause. *See Goyzueta*, 266 S.W.3d at 133 ("[I]f there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations.").[6]

**B.      Using gang hand signs and wearing gang clothing**

Provisions 15 of the permanent injunction and 16 of the temporary injunction prohibit Appellant from "[u]sing or making words, phrases, physical gestures, or symbols, commonly known as gang hand signs or engaging in other forms of communication which Defendant knows describes, refers, or identifies members of the combination, or wearing clothes that particularly identify membership in the combination."

**1.      Overbreadth and First Amendment Speech Concerns**

---

[6] Appellant also argues that provision 2 is vague because it does not define "gang member." This argument is flawed because there is a scienter requirement in the text of the injunction for a violation to occur. Appellant must know the person is a member of VC or another street gang. The scienter requirement removes concerns of vagueness. *See Gonzalez*, 127 S. Ct. at 1628; *see also Acuna*, 929 P.2d at 613 (1997) (holding with respect to similar gang injunctions that trial courts should find the requirement of defendant's knowledge to be implied in the injunction).

## Gang hand signs

Appellant argues that provision 16 of the temporary injunction and provision 15 of the permanent injunction[7] create an unconstitutional restriction on speech. Appellant first targets the clause that prohibits the use of gang signs and gestures to identify membership in a gang. Appellant argues these provisions encompass protected speech, making them overbroad.

## Applicable Law

A law is content-neutral when it is justified without reference to the content of the regulated speech. *Bartnicki v. Vopper*, 532 U.S. 514, 526, 121 S. Ct. 1753, 1760 (2001). The Supreme Court in *Madsen* pointed out a significant difference between injunctions and statutes in the context of protected speech claims. *Madsen*, 512 U.S. at 762, 114 S. Ct. at 2523. An injunction can regulate a particular group (or individuals) and its speech because of the group's past actions in the context of a specific dispute between real parties. *Id.*, 114 S. Ct. at 2523. The parties seeking the injunction assert a violation of their rights, and the court hearing the action is charged with fashioning a remedy for a specific deprivation, not with the drafting of a statute addressed to the general public. *Id.*, 114 S. Ct. at 2523. An injunction is

---

[7] Appellant was charged with and convicted of violating both.

16

content-neutral when it does not prohibit a particular message. *Id.*, 114 S. Ct. at 2523. The persons prohibited may all happen to share the same viewpoint, but this does not mean that the injunction was created to quash a particular viewpoint. *See id.*, 114 S. Ct. at 2523.

**Standard of Review**

The standard when evaluating a content-neutral injunction is whether the challenged provision of the injunction burdens no more speech than necessary to serve a significant government interest. *Id.* at 765, 114 S. Ct. at 2525. The injunction must employ the least restrictive means to accomplish its legitimate purpose. *Id*. at 775, 114 S. Ct. at 2530.

**Analysis**

This injunction is content-neutral because it did not prohibit any particular gang sign message; rather, it prohibited the use of all gang signs and gestures within the delineated zone. *See id*. at 763, 114 S. Ct. at 2523 (stating the injunction was content-neutral because none of the restrictions imposed by the court were directed at the contents of petitioner's message). In this case, there were several important government interests in preventing VC members from using the Safety Zone to engage in criminal activity that endangers those residing within the zone. The injunction itself says the defendants are enjoined from gang-related conduct because "[s]uch acts constitute irreparable harm because they jeopardize the safety and well being of the citizens living in the 'VC Safety Zone #1.'" There is an additional implied government interest in preventing the incitement of violence because, beyond general identification, the gang signs can also be used as threats or to provoke a violent event. *See*

18

*Saenz v. State*, 976 S.W.2d 314, 318 (Tex. App.—Corpus Christi 1998, no pet.) (describing gang sign language that indicated threats of violence between gang members).

The burden on Appellant's and the listed defendants' speech is not beyond the means necessary to maintain a safe area. The provision is not all-encompassing, as Appellant argues; it narrowly prohibits speech via gang signs and gestures only. Therefore, Appellant can speak about a wide range of topics within the Safety Zone without having his speech restrained. The injunction applies in equal force to all gang signs, not just VC signs, meaning the injunction does not focus on Appellant's particularized message. *See Madsen*, 512 U.S. at 763, 114 S. Ct. at 2523 (stating "none of the restrictions imposed by the court were directed at the contents of petitioner's message"); *see also City of Renton v. Playtime Theaters, Inc.,* 475 U.S. 41, 47,106 S. Ct. 925, 929 (1986) (holding that the restriction was content-neutral because it was aimed at the secondary effects in the surrounding community, not at a particular message). Therefore, the provision burdens no more speech than necessary to protect the safety of the neighborhood. *See Madsen*, 512 U.S. at 776, 114 S. Ct. at 2530 (holding that buffer zone and noise restrictions burdened no more speech than necessary to eliminate the unlawful conduct restrained in the state

court's injunction).  We overrule Appellant's overbreadth challenge for these provisions.

### 2. Vagueness

Appellant next argues that provision 15 of the permanent injunction and 16[8] of the temporary injunction are unconstitutionally vague.  He argues that there is no definition of "words, phrases, physical gestures or symbols" that are "commonly known as gang hand signs."

### Applicable Law and Analysis

Based on the previously stated void-for-vagueness doctrine, the provision appears to define the conduct sufficiently for ordinary people to understand it and for police officers to enforce the provision nonarbitrarily.  *See Lawrence*, 240 S.W.3d at 915.  The language indicates very specific motions and phrases through limiting the subject matter to hand gestures that identify the person as a gang member.  The language is specific enough to prevent arbitrary and discriminatory enforcement because hand gestures used by gangs are conspicuous and not difficult to determine, especially by trained police officers. *See Aviles v. State*, No. 05-07-00477-CR, 2008 WL 1850779, at *4 (Tex. App.—Dallas Apr. 28, 2008, pet. ref'd) (not designated for publication)

---

[8] The provisions are identical, and Appellant was charged and convicted for violating both.

(discussing Garland's inclusion of gang hand signs in the multi-factor system used for identifying potential gang members). Aside from training and experience, police officers may even rely on statutory language as a guide, such as section 71.01(d) of the penal code, which states that "'criminal street gang' means three or more *persons sharing a common identifying sign or symbol* or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." Tex. Penal Code Ann. § 71.01 (Vernon 2003) (emphasis added).

Appellant also makes a vagueness challenge regarding the gang clothing restrictions found in provisions 15 of the permanent injunction and 16 of the temporary injunction are unconstitutionally vague. Based on the previously stated void-for-vagueness standard, the provisions define the conduct sufficiently for ordinary people to understand it. The language is also specific enough to prevent arbitrary and discriminatory enforcement because gang colors are commonly known in a region, especially by the police. *See Beasley v. State*, 902 S.W.2d 452, 454 (Tex. Crim. App. 1995) (discussing officer's knowledge of appellant's gang membership based on specific color of clothing); *Anderson v. State*, 901 S.W.2d 946, 948 (Tex. Crim. App. 1995) (discussing officer's testimony that he knew defendant was a gang member because he was in company of gang members and wore a gang T-shirt). The police will not

21

be free to pursue their personal predilections because they will be limited to stopping named defendants who choose to wear gang-signifying clothing within the Safety Zone. We overrule Appellant's vagueness challenge to these provisions, and we overrule Appellant's fourth point.

**V.    Conclusion**

Having overruled all four of Appellant's points, we affirm the judgment.


PER CURIAM

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 12, 2009