

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-23-2008

# Schultz v. Wilson

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1023

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Schultz v. Wilson" (2008). *2008 Decisions.* Paper 53.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/53

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1023
_____

LANCE SCHULTZ; JESSICA STOUFFER;
ROBERT STOUFFER

v.

KEVIN WILSON; ROBERT GEBHART; SHARON GELWICKS; CHARLES
MCGEEHAN; FRATERNAL ORDER OF EAGLES 1562

Jessica Stouffer and Robert Stouffer,

Appellants

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 04-cv-1823)
District Judge: Honorable Christopher C. Conner

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 9, 2008
Before: MCKEE, SMITH, and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed December 23, 2008)

_____

OPINION
_____

PER CURIAM

Appellants, Jessica and Robert Stouffer, appeal from the District Court's order

granting summary judgment in favor of the defendants, Charles McGeehan, the Fraternal Order of Eagles 1562, and Robert Gebhart. For the reasons set forth below, we will affirm.

I.

On August 17, 2002, newlyweds Jessica and Robert Stouffer hosted a wedding reception at the Eagles Lodge in Gettysburg, Pennsylvania. The Eagles, a local chapter of the Fraternal Order of Eagles, is a private club, and only Eagles members may use the Lodge facilities. The Lodge has a reception hall area and a bar area, which are separated by a divider. The Stouffers's reception took place in the hall, but wedding guests were permitted to access the bar area as well.

On the night of the Stouffers's reception, several Eagles members were at the bar, including Charles McGeehan, a secretary and trustee of the Eagles. McGeehan, who was acting as a supervisor of the bar area, believed that the reception would end by 8:00 p.m. According to Jessica, however, the manager who had accepted her reservation had not specified an ending time, and the reception continued well beyond 8:00 p.m.

As the evening progressed, loud music with heavy bass began to play in the reception hall. At the bar, McGeehan remarked to another Eagles member that it was "n _ _ _ _ _ music," and asked the disc jockey to turn it down several times. Each time, the disc jockey complied, and, eventually, turned the bass off entirely.

Between 9:30 and 10:00 p.m., Robert Stouffer, the groom, approached McGeehan

2

to ask if the wedding guests could continue to use the reception hall past 10:00 p.m. McGeehan refused, and an argument ensued. At some point, McGeehan insulted Robert by calling him a "little boy." When Robert turned to leave the bar area, John Nichols, an Eagles member, punched him in the back of the head. In response, Robert swung around and hit Nichols in the face. At this point, an unidentified voice yelled, "someone call the cops." McGeehan called the police.

At 10:00 p.m., after the local police had already arrived at the Lodge, Trooper Robert Gebhart, an officer with the Pennsylvania State Police, arrived at the scene in plain clothes. After McGeehan and Nichols explained the situation to him, Trooper Gebhart went into the reception hall, turned on the lights to secure everyone's attention, and allegedly yelled: "You need to get the f_ _ _ out." Trooper Gebhart then headed toward Robert Stouffer, muttering, "where's the groom? I want a piece of him." Robert responded by stating, "who the hell are you?" Something then distracted Trooper Gebhart, who turned his attention away from Robert without further confrontation. Robert was, however, later arrested, and eventually convicted of disorderly conduct and simple assault.

On August 17, 2004, Jessica and Robert Stouffer filed a complaint in the United States District Court for the Middle District of Pennsylvania against McGeehan, the

3

Eagles, and Trooper Gebhart.[1]  In the complaint, the Stouffers, who are Caucasian, alleged that the conduct of McGeehan and Trooper Gebhart was motivated by racial animus against them and their wedding guests, some of whom were African American. The Stouffers claimed that: (1) McGeehan and the Eagles violated 42 U.S.C. § 1981 by ending the reception and requesting police assistance at the Lodge; and (2) McGeehan, the Eagles, and Trooper Gebhart were liable under 42 U.S.C. § 1983 for violating their First Amendment right of association when they interrupted the wedding reception.

On July 31, 2006, McGeehan and the Eagles, and Trooper Gebhart, moved for summary judgment on the Stouffers's claims.  By order entered December 4, 2007, the District Court granted both motions, and entered judgment in favor of the defendants. The present appeal followed.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  Our review of the District Court's order granting summary judgment is plenary.  Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007).  Applying the same test used by the District Court, we will affirm if, drawing all inferences in favor of the nonmoving party, we agree that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The "mere existence of a scintilla of evidence" in

---

[1] The complaint originally included additional claims that were later settled or voluntarily dismissed.

support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).

III.

A.     Race Discrimination Claim Pursuant to 42 U.S.C. § 1981

The Stouffers first alleged that McGeehan and the Eagles committed racial discrimination against them in violation of 42 U.S.C. § 1981. Specifically, the Stouffers claimed that McGeehan's decisions to bring the party to an end, and to call the police, were motivated by racial animus toward the wedding celebrants, thus depriving them of their right under § 1981 to enjoy their rental contract with the Eagles.

Section 1981 prohibits racial discrimination in the making and enforcement of contracts and property transactions. 42 U.S.C. § 1981. Thus, in order to succeed on a claim under § 1981, a plaintiff must generally demonstrate: "(1) that he belongs to a racial minority; (2) "an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981, including the right to make and enforce contracts." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 569 (3d Cir. 2002) (quotation omitted). A plaintiff need not be a member of a racial minority to bring a § 1981 claim; "[a] white person who is injured as a result of his or her efforts to defend the rights of non-whites has standing to sue under § 1981." Alder v. Columbia Historical Soc., 690 F. Supp. 9, 15 (D.D.C. 1988).

5

Upon review, we conclude that the District Court properly entered judgment in favor of the defendants on the Stouffers's § 1981 claim.[2] As an initial matter, it is not clear that the Stouffers had any contractual right to use the Lodge at the time the altercation with McGeehan began. The record reveals that there was no written agreement, and that, although Jessica Stouffer claims that the manager had not specified a time at which the reception must end, McGeehan was told that the reception was supposed to end by 7:30 or 8:00 p.m.

That being said, even assuming that the Stouffers did have a contractual right to use the Lodge late into the evening, we agree with the District Court that they failed to provide sufficient evidence of intentional race discrimination to withstand summary judgment. As the District Court explained, the only evidence that the Stouffers proffered to support their claim was testimony that McGeehan had remarked to a friend at the bar that the Stouffers were playing "n _ _ _ _ _ _ music" at their party. This fact, taken alone, is insufficient to create a genuine issue as to whether McGeehan's decision to bring the party to an end, and to call the police, was motivated by racial animus toward the wedding celebrants.

---

[2]We note that the Stouffers have arguably waived any objection to the District Court's § 1981 ruling due to their failure to squarely address that ruling in their brief. See Southwestern Pa. Growth Alliance v. Browner, 121 F.3d 106, 122 (3d Cir. 1997) (stating that "appellate courts generally should not address legal issues that the parties have not developed through proper briefing"). We will, however, construe the brief liberally and review the claim.

B.    First Amendment Claims Pursuant to 42 U.S.C. § 1983

The Stouffers also alleged that McGeehan, the Eagles, and Trooper Gebhart were liable under 42 U.S.C. § 1983 for violating their First Amendment right of association. Specifically, the Stouffers claimed that the defendants "violated their rights to associate and gather together under the First Amendment with black persons included in their group in circumstances where they rented the hall for their wedding." (App. 47.) We agree with the District Court that all three defendants were entitled to summary judgment on this claim.

First, the District Court correctly concluded that McGeehan and the Eagles could not be liable under § 1983 because they are not government actors. To establish liability under § 1983, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Private actors may be deemed to have acted under color of state law if their conduct is fairly attributable to the state. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). The Stouffers alleged that, even though the Eagles Lodge is a private club, the conduct of its members should be attributable to the state because the state has issued the Lodge a liquor license. Contrary to the Stouffers's contention, however, a private club does not act under color of state law for purposes of § 1983 solely because it holds a state-issued liquor license. Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 171-72 (1972).

7

Therefore, the District Court properly granted summary judgment in favor of McGeehan and the Eagles on the Stouffers's § 1983 claim.

The District Court also correctly concluded that Trooper Gebhart was entitled to summary judgment on the Stouffers's § 1983 claim because, even though he was clearly acting under color of state law when he responded to McGeehan's 9-1-1 call, the Stouffers's wedding reception was not an association entitled to First Amendment protection. The First Amendment protects two types of association: expressive and intimate. Generally speaking, expressive association protects the ability of individuals to gather in order to pursue "political, social, economic, educational, religious, and cultural ends." Roberts v. United States Jaycees, 468 U.S. 609, 622 (1984). To come within the protection of expressive association, "a group must engage in some sort of expression, whether it be public or private." Boy Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000). A social group is not protected unless it engages in expressive activity such as taking a stance on an issue of public, political, social, or cultural importance. Pi Lambda Phi Fraternity v. University of Pittsburgh, 229 F.3d 435, 444 (3d Cir. 2000).

Intimate association protects the closest and most interdependent of human relationships against state interference. Id. at 441-42. The types of relationships giving rise to this right may take various forms, but must be "distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Roberts, 468

8

U.S. at 620.

We agree with the District Court that the Stouffers's wedding reception is not entitled to protection under either theory. As the District Court explained, the Stouffers were not engaging in expressive activity by hosting a party to celebrate their marriage, as they clearly were not gathering to pursue a political, cultural, or civic goal. See City of Dallas v. Stanglin, 490 U.S. 19, 24-25 (1989) (stating that social association with strangers at a dance club does not implicate the right of expressive association); Pi Lambda, 229 F.3d at 444-45 (holding that fraternity lacked First Amendment protection because it engaged in merely social activities). Nor was their party an intimate association because a gathering of 100 people—some of whom had only an attenuated relationship with the Stouffers—does not involve the type of close and personal association entitled to this sort of constitutional protection. See Roberts, 468 U.S. at 619-20 (explaining that intimate associations involve "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life"). Therefore, the District Court correctly concluded that Trooper Gebhart was entitled to summary judgment on the Stouffers's § 1983 claim against him.[3]

---

[3]In their brief, the Stouffers argue that the District Court erred in failing to deem the allegations in the complaint as admitted on the ground that McGeehan and the Eagles never filed an answer. (Appellants' Brief 14-15.) This argument is waived because the Stouffers failed to raise it in the District Court. See United States v. Stevens, 223 F.3d 239, 244 (3d Cir. 2000).

IV.

For the foregoing reasons, we will affirm the District Court's order granting summary judgment in favor of the defendants.