NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No.  09-3251

_____

STEVEN L. ROBERTS; SHANE DEARDORFF;
MATTHEW T. SHUEY; MICHAEL S. LYONS;
CLAIR MARTIN; TIMOTHY W. WHEALE;
GORDON J. BERLIN

v.

JACK F. MENTZER; JOSEPH M. DITZLER;
ELIZABETHTOWN BOROUGH

Steven L. Roberts, Shane Deardorff,
Matthew T. Shuey, Michael S. Lyons,
Clair Martin and Timothy W. Wheale,
Appellants

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 08-cv-4507)
District Judge: Honorable Juan R. Sanchez

_____

Submitted Under Third Circuit LAR 34.1(a)
April 20, 2010

Before: SCIRICA and AMBRO, Circuit Judges, and JONES,[*] District Judge

(Opinion filed: May 27, 2010)

_____

[*] The Honorable John E. Jones, III, United States District Judge for the Middle
District of Pennsylvania, sitting by designation.

## OPINION

JONES, District Judge

Steven L. Roberts ("Roberts"), Shane Deardorff ("Deardorff"), Matthew T. Shuey ("Shuey"), Michael S. Lyons ("Lyons"), Clair Martin ("Martin"), and Timonthy W. Wheale ("Wheale") appeal the District Court's dismissal of their 42 U.S.C. § 1983 claims,[1] which are based on alleged violations of the rights secured under the First, Fourth, and Fourteenth Amendments of the federal Constitution and the related rights protected under the Pennsylvania Constitution. We affirm.[2]

### I.

In 2008, Michael Lyons ("Lyons"), a police officer with the Borough of Elizabethtown (the "Borough"), sued the Borough, Police Chief Jack F. Mentzer ("Chief Mentzer"), and Assistant Chief Joseph M. Ditzler ("Assistant Chief Ditzler"), (collectively, "the Defendants" or "Appellants"), alleging that they retaliated against him

---

[1] This provision states, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4), 1367. We have jurisdiction under 28 U.S.C. § 1291.

2

in violation of his First Amendment rights.[3] While that case was ultimately resolved on summary judgment,[4] the facts undergirding the present case occurred during the *Lyons I* discovery period. In his initial disclosures made pursuant to Federal Rule of Civil Procedure 26(a),[5] Lyons listed Roberts, Deardorff, Shuey, Martin, Wheale, and Gordon J. Berlin ("Berlin")[6] as individuals who might have information relevant to his First Amendment claim. Consequently, the Defendants sought to depose these individuals. Prior to the depositions, the Defendants allegedly provided their attorneys with the personnel files of the Police Officers without the Police Officers' consent. During their respective depositions, the Police Officers were allegedly questioned about sensitive and confidential information contained in their personnel files. The instant matter was subsequently initiated by Lyons, Roberts, Deardorff, Shuey, Martin, and Wheale,

---

[3] We shall refer to this initial suit as "*Lyons I.*"

[4] District Judge Juan R. Sanchez granted summary judgment in favor of Chief Mentzer, Assistant Chief Ditzler, and the Borough, reasoning that Lyons' First Amendment claim was barred because his speech occurred pursuant to his official duties and was therefore not protected. *See Lyons v. Mentzer*, 2008 WL 4444272 *4 (E.D. Pa. 2008) (*Lyons I*) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 410-11 (2006)).

[5] Rule 26 requires a party to provide its opponent with, *inter alia*, "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i).

[6] These individuals were either current or former police officers of the Elizabethtown Borough at the time Lyons joined the police force. We shall refer to them collectively as "the Police Officers."

3

(collectively, "Plaintiffs" or "Appellants"), who allege that Appellees violated their federal and state constitutional rights by providing Appellees' attorneys with the information contained in their personnel files.[7] The District Court ultimately dismissed these claims, and the Appellants timely appealed.

II.

Our review of the District Court's order granting Defendants'/Appellees' Motion to Dismiss the Amended Complaint is plenary. *See AT&T v. JMT Telecom, LLC*, 470, F.3d 525, 530 (3d Cir. 2006). In conducting a plenary review of this case, we must accept as true all of the allegations contained in the amended complaint and draw all inferences from the allegations in the light most favorable to the Plaintiffs/Appellants. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). A motion to dismiss should be granted if the Plaintiffs are unable to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, - - U.S. - -, 129 S.Ct. 1937, 1949 (2009). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

---

[7] We shall refer to this suit as "*Lyons II*."

III.

Appellants argue that the District Court erred in granting summary judgment on their federal and state constitutional claims.[8] We address these claims *seriatim*.[9]

A.    First Amendment Claims

Appellants allege that their First Amendment rights to appear as witnesses, to associate with persons of their choosing, to access the courts, to petition the courts for redress, and to be free from retaliation were denied by Appellees' actions in the underlying litigation. We discuss these in turn.

Appellants' right to access claim appears to be predicated upon the assertion that the use of their personnel files during the depositions conducted in *Lyons I* somehow compromised the success of that suit. In order to maintain such a suit, Appellants must "demonstrate that a defendant caused 'actual injury' . . . *i.e.,* took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'"

---

[8] The federal Constitution provides the minimum safeguards for individual liberty. *See Florida v. Powell*, 130 S.Ct. 1195, 1203 (3d Cir. 2010) ("state courts are absolutely free to interpret state constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution"). Therefore, conduct that does not violate the federal Constitution cannot violate the Pennsylvania state Constitution. As we explain below, we do not believe that the conduct of the Appellees violated the federal Constitution, and so our analysis is confined to federal constitutional principles.

[9] In doing so, we take special care not to conflate the conduct of Appellees (providing their attorneys with the personnel files) with the conduct of Appellees' attorneys (using information in the files as the basis for allegedly improper questions).

*Beckerman v. Susquehanna Twp. Police & Admin.*, 254 Fed. Appx. 149, 153 (3d Cir. 2007) (citing

*Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (citations omitted)).  Since the underlying litigation was instituted by Lyons alone, he is the only individual who could possibly maintain a First Amendment right to access claim.  However, his right to access claim fails because the First Amendment claim he asserted in *Lyons I* was dismissed for reasons unrelated to the testimony given by the Police Officers, meaning that the Appellees' conduct did not in fact cause him any harm.[10]  Accordingly, the District Court appropriately dismissed the First Amendment right to access claims.

In relation to the right to petition claims, we note again that Lyons is the only individual who could possibly maintain such a claim since he is the only individual who petitioned the government prior to this suit.  However, his right to petition claim seems to be based on the same premise as his right to access claim; to wit, that Appellees' conduct compromised the testimony he would have elicited from the Police Officers, thereby

---

[10] Indeed, as noted, *Lyons I* was dismissed because Lyons could not establish that his speech was uttered as a citizen, and not in his official capacity. *See Lyons I* at * 3 (Lyons' speech included, *inter alia*, "his complaints to superiors, up the chain of command, regarding fellow officers failing to follow up on criminal investigations, unreasonably returning police reports for punctuation errors, interfering with Drug Task Force investigations, improperly issuing violation notices for work properly performed, unlawfully seizing drugs from other jurisdictions, and inappropriately discussing confidential police information with civilians."). Assuming, *arguendo*, that Appellees' conduct did deprive Lyons of certain testimony, that testimony could not have possibly altered the very nature of Lyons' speech. Consequently, we do not believe that Appellees' conduct caused Lyons actual injury.

preventing him from maintaining his First Amendment retaliation claim in *Lyons I*. Since we view these claims as indistinguishable, *see Woodford v. Ngo*, 548 U.S. 81, 122 (2006) ("the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances"), we shall deny Lyons' right to petition claim for the reasons stated in our discussion of his right to access claim. Accordingly, the District Court did not err in dismissing Appellants' right to petition claims.

With regard to Appellants' right of association claim, we note that "the First Amendment protects two types of association: expressive and intimate. Generally speaking, expressive association protects the ability of individuals to gather in order to pursue political, social, economic, educational, religious, and cultural ends . . . . Intimate association protects the closest and most interdependent of human relationships against state interference." *Schultz v. Wilson*, 304 Fed. Appx. 116, 120 (3d Cir. 2008) (internal quotations and citations omitted). Since Appellants allege that Appellees' conduct prevented them from freely associating with individuals of their choosing, we construe their claims as being grounded in the theory of intimate association. Intimate associations "by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*, 229 F.3d 435, 442 (3d Cir. 2000) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 619-20 (1984)). Appellants have not

provided us with any authority, nor can we locate the same, indicating that any type of employment, much less the public employment at issue in this case, automatically gives rise to an "intimate association."  Further, Appellants have failed to lodge allegations from which a reasonable person could infer that such an association developed amongst them.  Moreover, Appellants have failed to identify how Appellees' disclosure of the personnel files adversely affected their rights of association.  Accordingly, the District Court properly dismissed Appellants' freedom of association claims for failure to state a claim upon which relief may be granted.

Appellants also argue that Appellees' conduct infringed upon their First Amendment rights to appear as witnesses.  However, although the right to appear and give true testimony as a witness in a legal proceeding is guaranteed by the free speech clause of the First Amendment, *see Melton v. Oklahoma City*, 879 F.2d 706, 714 (10th Cir. 1989), *cert. denied*, 502 U.S. 906 (1991), Appellants have not alleged that Appellees' conduct caused them either to fail to appear as witnesses or to provide false testimony when they did appear as witnesses.  Indeed, as the District Court noted, Appellants do not contest the fact that during the litigation of this case they did have an opportunity to appear as witnesses and be deposed with their attorneys present.  If the Appellants felt that improprieties were committed in connection with their depositions they could have

8

alerted the District Court to the same. *See* Fed. R. Civ. P. 30.[11] However, they failed to do so. Accordingly, the District Court properly dismissed Appellants' First Amendment claims to this extent.

Finally, to the extent that Appellants have lodged First Amendment retaliation claims against the Appellees, we take cognizance of the three-step burden-shifting analysis utilized when analyzing claims of this nature by public employees. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). "First, the employee must show that the activity is in fact protected. Second, the employee must show that the protected activity 'was a substantial factor in the alleged retaliatory action.' Third, the employer may defeat the employee's claim by demonstrating that the same adverse action would have taken place in the absence of the protected conduct." *Id.* (citations omitted). In determining whether an alleged act of retaliation can sufficiently support a First Amendment retaliation claim, we look to whether the act would be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks and citation omitted). In the case at bar, as far as we can tell, the First Amendment retaliation claim asserted by Lyons is premised upon his filing of *Lyons I*, and the retaliation claims asserted by the

---

[11] When a deposition is "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party," the deponent or party may move the court to terminate or limit the scope of the deposition. *See* Fed. R. Civ. P. 30(d)(3)(A).

remaining Appellants are premised on their willingness to be deposed as Lyons' witness in *Lyons I.*

As the District Court noted, "Depositions are adversarial in nature . . . ." *Jiminez v. All-American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007) (citing *Darnell v. Target Stores*, 16 F.3d 174, 176 (7th Cir. 1994)). Nothing in the amended complaint indicates that Appellees' disclosure of the personnel files was done for any purpose other than to assist in their defense of Lyons' allegations. Indeed, Appellants admit that the personnel files were being used in order to identify bias and to otherwise impeach their credibility or cast them in a negative light. *See* Amend. Compl.¶ 19. Certainly, such a use was reasonable given the nature of the lawsuit in *Lyons I*, *i.e.* a First Amendment retaliation suit. Consequently, we believe that the conduct about which Appellants complain is not "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."[12] Accordingly, the District Court did not err in dismissing Appellants' First Amendment retaliation claims.

### B. Fourth Amendment Claims

The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

---

[12] This conclusion is buttressed by the fact that although Appellants had the opportunity to complain about the alleged improprieties associated with the depositions, they failed to do so. Quite simply, we decline the invitation to classify zealous cross-examination as retaliatory conduct.

10

be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend IV. An individual's Fourth Amendment rights are implicated in situations where he or she has a reasonable expectation of privacy. *See O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). The amended complaint clearly avers that the Appellees maintained and had access to the personnel files. *See* Amended Compl. ¶¶ 15, 16. Conversely, the amended complaint is completely bereft of any indication that the personnel files belonged to Appellants. Nor have Appellants provided us with any case law indicating that employees have a privacy interest in the personnel files maintained by their employers. Indeed, we believe that reasonable employees would assume that the personnel files maintained by their employer could be used in an employment-discrimination lawsuit in which they testified. In such circumstances, we believe that there is no reasonable expectation of privacy in said files.[13] *See Ortega*, 480

---

[13] Appellants argue that if we affirm the District Court's determinations, we will be implicitly sanctioning employers to manipulate the records of its employees as they see fit, including, but not limited to, distributing and publishing information derived therefrom. This argument misapprehends our holding, which is expressly limited to the facts of this case. As stated, the matter at bar is based upon the First Amendment claims asserted against Chief Mentzer, Assistant Chief Ditzler, and the Borough in *Lyons I*. In that case, Lyons himself identified Roberts, Deardorff, Shuey, Martin, Wheale, and Berlin as individuals who might have information relevant to his First Amendment retaliation claim. These individuals were eventually subpoenaed for deposition. In that context, we believe it was entirely reasonable for the Appellees to provide their attorneys with the personnel files of those individuals, which Appellees created and maintained, so that any potential biases could be identified during the depositions. Appellant's slippery slope argument is inapt for all of the foregoing reasons.

11

U.S. at 717 ("The employee's expectation of privacy must be assessed in the context of the employment relation."). Therefore, we find that the District Court did not err in dismissing Appellants' Fourth Amendment claims.[14]

C.      Fourteenth Amendment Substantive Due Process Claims

The due process clause of the Fourteenth Amendment states, in pertinent part, "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.  The elements of a substantive due process claim are that: (i) defendants acted under color of law; (ii) a protected property or liberty interest was at

---

[14] To be sure, we can envision a circumstance where the revelation of information contained in a personnel file might support a claim of retaliation; to wit, if sensitive information that could not possibly be used to assess bias was gratuitously or recklessly released.  There is no indication that this occurred here.  While Appellants baldly allege that certain medical and confidential information was released to Appellees' counsel in advance of the depositions, there is no indication that any information utilized by Appellees fell outside the realm of what could have been reasonably used to assess the existence of bias. Moreover, Appellants fail to cite to any deposition testimony demonstrating the inappropriate release of information from their files, nor have they attached the depositions as exhibits to their complaint, which could have been accomplished under seal to preserve confidentiality.  In short, Appellants have provided us with nothing more than blanket assertions that the disclosed information was "confidential" and therefore that its release was unconstitutional. Such allegations are insufficient to allow their claims to survive. *See Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009) (While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face."); *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Bare allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss.).

12

stake; (iii) the defendants had a duty of care toward the plaintiff; and (iv) a deprivation within the meaning of the due process clause occurred. *See Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994). The amended complaint avers that Appellees, in their official capacities, violated Appellants' substantive due process rights by depriving them of their protected property interests in their personnel and medical records and their protected liberty interest in being "free of arbitrary and capricious government actions devoid of any legitimate government purposes . . . ." Amend Compl. ¶¶ 8, 22.

In order to support a substantive due process claim, the government conduct must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Kaucher v. County of Bucks*, 455 F.3d 418, 425 (3d Cir. 2006). The determination of whether conduct "shocks the conscience" is dependent upon the facts of each particular case. *See id.* at 425-26. As aforestated, we believe that, in the context of *Lyons I*, it was entirely reasonable for Appellees to do provide their counsel with the personnel files of those individuals who were specifically identified by Lyons in Rule 26(a) disclosures and who have been subpoenaed to testify, as doing so would assist their counsel in determining whether Lyons' allegations of unlawful retaliation were meritorious. Accordingly, we do not believe that Appellees' conduct "shocks the conscience," meaning that the District Court did not err in concluding that Appellants failed to state a substantive due process claim upon which relief can be granted.

13

Based on the foregoing discussion, the District Court properly dismissed the above-captioned action because Appellants failed to establish that their First, Fourth, or Fourteenth Amendment rights had been violated. However, even if Appellants' rights had been violated, the doctrine of qualified immunity would insulate Mentzer and Ditzler from liability. The doctrine of qualified immunity protects government officials performing discretionary functions so long as their conduct does not violate established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Stated differently, in assessing whether Chief Mentzer and Assistant Chief Ditzler should be vested with qualified immunity, we must determine whether there was a constitutional violation and whether there was good reason for them to know that their actions were unconstitutional. *Wilkie v. Robbins*, 551 U.S. 537 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *see also Pearson v. Callahan*, - - U.S. - -, 129 S.Ct. 808 (2009) (modifying *Saucier* to the extent that courts need not address one specific inquiry before the other). As stated above, given that Appellees' conduct occurred in the context of a First Amendment retaliation lawsuit in which Appellants were identified in Rule 26(a) disclosures and subpoenaed to testify, we do not believe that a reasonable person could conclude that Appellees should have known that their disclosure of Appellants' personnel files violated either the First, Fourth, or

14

Fourteenth Amendments of the federal Constitution.[15]  Consequently, Appellees would be vested with qualified immunity in the instant lawsuit. *See Groh v. Ramirez*, 540 U.S. 551, 571 (2004) (for the proposition that qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law). Accordingly, the District Court's decision to dismiss the claims against them was proper in any event.

Further, with regard to the allegations lodged against the Borough, we note that a municipality is liable under § 1983 for constitutional violations "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict the injury." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978).  A municipality is not liable under § 1983 unless the policy or custom is the moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  The amended complaint is completely bereft of any allegations related to a policy or custom adopted by the Borough, much less a policy or custom that directly resulted in the alleged deprivation of Appellants' constitutional rights.  Accordingly, the District Court's decision to dismiss the claims against it was entirely appropriate.

\*   \*   \*   \*   \*

---

[15] Again, this determination is premised on the fact that Appellants have failed to identify any specific information contained in the personnel files and used during the depositions that was not designed to identify bias.

15

Based on the foregoing, we affirm the judgment of the District Court.